**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| JOSEPH RUPPERT, as trustee of and on behalf of FAIRMOUNT PARK, INC. RETIREMENT SAVINGS PLAN, and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) No. 4:07-cv-00344-JAJ-TJS ) |
| PRINCIPAL LIFE INSURANCE CO., | ) ) |
| Defendant. | ) |

## FIRST AMENDED COMPLAINT

Comes now Plaintiff Joseph Ruppert, through his counsel, as Trustee of and on behalf of

the Fairmount Park, Inc. Retirement Savings Plan and on behalf of all others similarly

situated,

and for his Complaint against Defendant Principal Life Insurance Co., states as follows:

## PARTIES

1.  Plaintiff Joseph Ruppert is a trustee of the Fairmount Park, Inc. Retirement Savings

Plan. Ruppert brings this action in his capacity as trustee of and on behalf of the Fairmount

Plan.

2.  Defendant Principal Life Insurance Co. is an Iowa corporation with its principal place

of  business in Des Moines, Iowa. Defendant advertises its services, solicits retirement plan

business  and serves as a full service retirement plan service provider for retirement plans

located  throughout the country.

1

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1)(2) (29 U.S.C. § 1132 (e)(1)(2)).

4.  Principal's principal place of business is located in this district, and many of the events or transactions alleged in this complaint occurred in this district.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

### *Principal's Employer-Sponsored 401(k) Plan "Full Service" Packages*

5.  Principal offers "full service" 401(k) retirement plans to employers who wish to provide retirement plans for their employees.

6.  Principal's employer-sponsored 401(k) retirement plans enable employees to invest pretax earnings in mutual funds.

7.  Principal selects from among the thousands of mutual funds available and offers those select mutual funds as part of its pre-packaged 401(k) retirement plans.

8.  When deciding which the mutual funds an employer wishes to be included in its 401(k) plan, the employer selects from among those pre-selected by Principal. An employer may only choose from among those mutual funds Principal selected for inclusion in its pre-packaged 401(k) plans. When deciding in which mutual funds to invest their retirement savings, employees then choose from among the group of mutual funds jointly selected by Principal and their employer.

9.  After an employer selects the mutual funds which it will offer to its employees, Principal retains the authority to substitute other mutual funds for the chosen mutual funds.

10. After an employer selects the mutual funds which it will offer to its employees, Principal also retains the authority to refuse an employer's or employee's choice of a particular mutual fund by closing the fund to new investments.

11. As a full service plan provider, Principal provides all the services necessary for employers to provide retirement plans for their employees.

12. As a full service plan provider, Principal provides complete plan management services so that employers can "spend time managing [their] business, not [their] plans."

13. Principal provides to employers promotional materials for promoting an employer's plan to its employees, materials and services to help employers meet education, plan and participation requirements (including an employee enrollment kit and educational materials), and ongoing support to communicate with employees. As part of its ongoing support services, Principal provides an Internet homepage which gives plan participants access to their investment portfolio and more than 80 planning calculators, reports which advise plan participants about the status of their retirement savings and their investment performance, and asset allocation assistance.

14. Principal also provides employers with complete plan administration services, legal compliance services and consulting services. Those services include daily updates of plan records, a program for distribution of benefits to employees, investment reports to employees, pre-printed employee newsletters and signature-ready government forms.

15. As part of its marketing of pre-packaged plans, Principal touts to employers its "investment strategy … backed by over a century of financial expertise."

16. Principal also touts its "investment philosophy, goals and strategies" to employers, and represents that its "investment strategies are designed to produce superior long-term results."

17. Thus, Principal holds itself out to employers and employees as a highly-skilled financial expert, possessing special knowledge and expertise.

18. Principal provides investment advice to employers and participating employees, including the implicit advice that the mutual funds Principal offers are sound retirement plan investments.

19. Principal also provides more individualized investment advice to employees through Principal's "Investor Profile Quiz." The quiz, available on Principal's Internet site and employee enrollment kits, helps employees determine their risk tolerance on a scale of 1 to 5.

20. Principal represents to employers that it charges "competitive fees" and "low fees mean greater opportunity for returns;" "paying less in fees may be one way for your plan members to save more for retirement."

### Principal's Selection of Mutual Funds

21. Investment advisors to mutual funds charge the funds they advise fees for the advisors' investment management services.

22. As a condition for the fund to be included in Principal's pre-packaged 401(k) plans, Principal negotiates and requires each mutual fund advisor (or the fund's distributor) to pay a kickback to Principal, which Principal euphemistically describes as a "revenue sharing" fee.

23. Principal selects for inclusion in its pre-packaged 401(k) plans only those mutual funds whose advisors (or distributors) agree to make the kickback payment.

24. The "revenue sharing" kickbacks are a percentage of any given retirement plan's assets invested in any given mutual fund or mutual fund family.

25. When the mutual fund advisors (or distributors) agree to pay the "revenue sharing" kickbacks to Principal, they effectively agree to take a reduced fee, although the full amount

of the fee is still charged to the mutual fund (and thus its shareholders). However, the charge includes a "revenue sharing" component which represents the kickback payment to Principal.

26. Principal exercises exclusive control and discretion over the negotiation of such investment management fees.

27. Principal also exercises exclusive control and discretion over the selection of mutual funds available as investment options to plans and their participants.

28. Principal also has the exclusive control and discretion to substitute or close mutual funds as investment options for a plan and its participants.

### *Principal is an ERISA Fiduciary with Respect to*
### *Mutual Fund Investment Management Fees Charged to Plan Participants*

29. By providing complete plan management services so that employers can "spend time managing [their] business, not [their] plans," Principal assumes some of the responsibilities imposed upon employers as plan sponsors.

30. A special relationship of confidence, trust, or superior knowledge or control existed both between Principal and employers who retained Principal for its pre-packaged 401(k) plans and between Principal and employees participating in a Principal 401(k) plan as a result of the following:

    a. Principal's holding itself out to employers and employees as highly-skilled financial experts, possessing special knowledge and expertise;

    b. Principal's encouragement of employers and participating employees to place their utmost trust and confidence in Principal's management of their 401(k) plans;

    c. Principal's encouragement of employers and participating employees to place their utmost trust and confidence (with their retirement savings) in Principal's financial expertise and advice;

    d.  Principal's assumption of a position of trust and confidence, with respect to both employers and employees, by servicing and managing employer-sponsored 401(k) plans;

    e.  Principal's assumption of the responsibility to provide unbiased expertise and 401(k) plan management to employers and employees;

    f.  Principal's assumption of the responsibility to provide unbiased, expert advice to employers and employees to the extent Principal provided investment advice to employers and employees, and/or

    g.  Principal's assumption of the responsibility to employers and employees to negotiate favorable investment management fees with mutual funds and their advisors arising from Principal's exclusive control over the selection of mutual funds to be included and available in its 401(k) and from Principal's exclusive control over the negotiations of investment management fees with mutual funds and their advisors;

31. Principal regularly rendered advice to plans such as the Fairmount Park plan as follows:

    a)  through Principal's representation of its pre-selected mutual funds to be appropriate investments for the plan and its participants;

    b)  through Principal's unilateral control over which mutual funds would continue to be available to 401(k) plans;

    c)  through Principal's "Investor Profile Quiz" which it used to help employees determine their investment risk tolerance and matching specific mutual funds to the employees' tolerance; and/or

    d)  through Principal's recommendations regarding which of its pre-selected mutual funds should be included in a plan based on Principal's analysis of a plan's previous investments.

32. Principal's services served as the primary basis for investment decisions by both the plans and their participating employees.

33. Principal services included the rendering of individualized investment advice to plans or their participants based on the particular needs of the plans or participants regarding such

matters as investment policies or strategies, overall portfolio composition and diversification of plan investments.

34. Principal was therefore a fiduciary to plans such as the Fairmount Park Plan within the meaning of ERISA § 3(21)(A) (29 U.S.C. § 1002(21)(a)).

35. Accordingly, Principal owed certain fiduciary duties to plans such as the Fairmount Park Plan and their plan participants under ERISA § 404(a)(1)(A) and (B) (29 U.S.C. § 1104(a)(1)(A) and (B)).

36. Among the fiduciary duties Principal voluntarily assumed and owed to plans such as the Fairmount Park Plan and their participants, was a duty to negotiate mutual funds' (or their advisors') investment management fees so as to defray those expenses of administering the plans.

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings this class action in his capacity as trustee of the Fairmount Park Plan and on behalf of a class of all retirement plans to which Principal was a service provider and for which Principal received and kept "revenue sharing" kickbacks from mutual funds.

38. Plaintiff is a class member and will fairly and adequately assert and protect the Class's interests.

39. Plaintiff's interests are coincident with, and not antagonistic to, those of other Class members.

40. Plaintiff's claims are typical of those of the Class.

41. Plaintiff has retained counsel who is experienced in ERISA class action litigation.

42. Members of the Class are so numerous that joinder of all members is impracticable. While Plaintiff cannot ascertain the exact number and identity of Class members prior to

discovery, on information and belief, there are thousands of Class members and their identity

can be ascertained from Principal's books and records.

43. Plaintiff and the Class sustained damages from Principal's conduct.

44. This case presents questions of law or fact which are common to all class members,

and those common questions predominate over any questions affecting only individual

members of the Class, including:

i.   Whether Principal held itself out to plans and their participants as a highly-skilled financial expert, possessing special knowledge and expertise;

ii.  Whether Principal encouraged employers and participating employees to place their utmost trust and confidence in Principal's management of their 401(k) plans;

iii. Whether Principal encouraged employers and participating employees to place their utmost trust and confidence (with their retirement savings) in Principal's financial expertise and advice;

iv.  Whether Principal assumed a position of trust and confidence, with respect to both employers and employees, by servicing and managing employer-sponsored 401(k) plans;

v.   Whether Principal assumed the responsibility to provide unbiased expertise and 401(k) plan management to employers and employees;

vi.  Whether Principal assumed the responsibility to provide unbiased, expert advice to employers and employees to the extent Principal provided investment advice to employers and employees;

vii. Whether Principal assumed the responsibility to employers and employees to negotiate favorable investment management fees with mutual funds and their advisors as a result of Principal's exclusive control over the selection of mutual funds to be included and available in its 401(k) and from Principal's exclusive control over the negotiations of investment management fees with mutual funds and their advisors;

viii. Whether Principal regularly rendered advice to plans such as the Fairmount Park plan and their participants;

ix.  Whether Principal was a fiduciary to plans like the Fairmount Park Plan and their participants;

> x.    Whether Principal breached a fiduciary duty to plans like the Fairmount Park Plan and their participants by demanding and keeping "revenue sharing" payments from mutual funds;
>
> xi.   Whether plans like the Fairmount Park Plan and their participants sustained damages as a consequence of Principal's misconduct; and/or
>
> xii.  The amount of any such damages.

45. The class action method is a superior means for the fair and efficient adjudication of this action, because individual actions would or might:

> i.    result in inconsistent or varying adjudication with respect to individual class members;
>
> ii.   result in adjudications with respect to individual class members that could, as a practical matter, be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interests; or
>
> iii.  produce a multiplicity of cases creating a substantial but unnecessary burden for the courts.

46. A trial of this case as a class action will be manageable because the claims and defenses will be subject to class-wide proof.

## COUNT I
## BREACH OF FIDUCIARY DUTY

47. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 46 above as if fully set forth here.

48. Principal does not disclose, or does not adequately disclose, to the plans such as the Fairmount Park Plan, to employers, or to participating employees the fact that Principal negotiates revenue sharing fees with the mutual funds that are included in its pre-packaged 401(k) plans.

49. Principal does not disclose, or does not adequately disclose, to the plans such as the Fairmount Park Plan, to employers, or to participating employees the fact that Principal

accepts revenue sharing fees from the mutual funds that are included in its pre-packaged 401(k) plans.

50. Principal does not disclose, or does not adequately disclose, to the plans such as the Fairmount Park Plan, to employers, or to participating employees the amount of the revenue sharing fees Principal negotiates with and receives from the mutual funds that are included in its pre-packaged 401(k) plans.

51. Instead of passing along the "revenue sharing" kickbacks (or the lower investment management fees) to plans such as the Fairmount Park Plan and their plan participants, Principal keeps "revenue sharing" kickbacks from mutual funds.

52. The "revenue sharing" kickbacks Principal takes bear no relationship to Principal's costs of providing services to plans or participants and are in addition to the fees Principal charges for those services.

53. The plans such as the Fairmount Park Plan and their participants receive no extra services from Principal in addition to the services for which the plan already pays in exchange for the revenue sharing payments Principal receives from the mutual funds.

54. The "revenue sharing" kickbacks are thus windfalls to Principal which serve only to increase Principal's income at the expense of the plans such as the Fairmount Park Plan and ultimately at the expense of the participating employees.

55. Principal breached the fiduciary duties it owed (by virtue of ERISA § 404(a)(1)(A) (29 U.S.C. § 1104(a)(1)(A))) to the plans such as the Fairmount Park Plan and its participants in one or more of the following ways:

    a.   failing to disclose (or to disclose adequately) to the plans such as the Fairmount Park Plan, to employers, or to participating employees the fact that Principal negotiates revenue sharing fees with the mutual funds (or their advisors) that are included in its pre-packaged 401(k) plans;

b. failing to disclose (or to disclose adequately) to the plans such as the Fairmount Park Plan, to employers, or to participating employees the fact that Principal accepts revenue sharing fees from the mutual funds (or their advisors) that are included in its pre-packaged 401(k) plans;

c. failing to disclose (or to disclose adequately) to the plans such as the Fairmount Park Plan, to employers, or to participating employees the amount of the revenue sharing fees that Principal accepts from the mutual funds (or their advisors) that are included in its pre-packaged 401(k) plans;

d. keeping revenue sharing kickbacks from mutual funds (or their advisors) for Principal's own benefit;

e. failing to use the revenue sharing kickbacks to defray the reasonable expenses of administering the plan; and/or

f. failing to act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

56. The Fairmount Park Plan and class members sustained and continue to sustain damages as a direct and proximate result of Principal's breaches of fiduciary duty.

57. Pursuant to ERISA § 409(a) (29 U.S.C. § 1109(a)), Principal is liable to the Fairmount Park Plan and the Class for its breaches of fiduciary duties to make good to such plans all losses resulting from each such breach, to restore to each such plan all profits Principal realized as a result of each such breach, and is subject to such other equitable and remedial relief as the Court deems appropriate.

WHEREFORE, Plaintiff prays that this Court enter its judgment in favor of Plaintiff and the Class: declaring that Principal's undisclosed acceptance of "revenue sharing" kickbacks from mutual funds (or their advisors) participating in employer-sponsored 401(k) plans which Principal serves violates ERISA; permanently enjoining Principal's acceptance (or, alternatively acceptance without adequate and conspicuous disclosure) of "revenue sharing" kickbacks from such mutual funds (or their advisors); requiring Principal to disgorge to the Fairmount Park Plan and to the Class all such revenue sharing fees Principal has

accepted in its service to the Fairmount Park Plan and to the Class; and awarding attorneys'

fees, pre-judgment and post-judgment interest, costs, and such further relief as the Court

deems just and proper.

## COUNT II
## PROHIBITED TRANSACTIONS

58. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs

1 through 57 above as if fully set forth here.

59. Because of the large number of 401(k) plans Principal serves, Principal effectively

represents an extremely large sum of plan assets when it negotiates "revenue sharing"

kickbacks which mutual funds and their advisors are eager to tap into. Thus, Principal's

ability to extract revenue sharing deals with mutual funds (or their advisors) is a direct result

of Principal's representation of such massive amounts of employer-sponsored 401(k) plan

assets.

60. ERISA § 406(b)(1) (29 U.S.C. § 1106(b)(1)) prohibits fiduciaries from "deal[ing] with

the assets of the plan in his own interest or for his own account."

61. ERISA § 406(b)(3) (29 U.S.C. § 1106(b)(3)) prohibits fiduciaries from "receiv[ing]

any consideration for his own personal account from any party dealing with such plan in

connection with a transaction involving the assets of the plan."

62. Principal Defendant violated ERISA §§ 406(b)(1) and 406(b)(3) (29 U.S.C.

§§ 1106(b)(1) & (b)(1)) in one or more of the following ways:

    a.  using plan assets to generate revenue sharing kickbacks for Principal's own
       interest and for its own account; and/or

   b.  keeping revenue sharing kickbacks from the mutual funds (or their advisors) that are
       included in Principal's pre-packaged 401(k) plans for Principal's own interest and for
       its own account.

WHEREFORE, Plaintiff prays that this Court enter its judgment in favor of Plaintiff and

the Class: declaring that Principal's undisclosed acceptance of "revenue sharing" kickbacks

from mutual funds (or their advisors) participating in employer-sponsored 401(k) plans which

Principal serves violates ERISA; permanently enjoining Principal's acceptance (or, alternatively

acceptance without adequate and conspicuous disclosure) of "revenue sharing" kickbacks from

such mutual funds (or their advisors); requiring Principal to disgorge to the Fairmount Park Plan

and to the Class all such revenue sharing fees Principal has accepted in its service to the

Fairmount Park Plan and to the Class; and awarding attorneys' fees, pre-judgment and post-

judgment interest, costs, and such further relief as the Court deems just and proper.

## COUNT III

63. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1

through 62 above as if fully set forth here.

64. After an employer establishes a 401(k) retirement plan, the employer transfers its

employees' contributions to Principal.

65. For the thousands of 401(k) plans which Principal services, Principal receives and thus

commingles all 401(k) plan contributions in one of two bank accounts. Principal maintains one

bank account for "trusteed plans" and another for "non-trusteed plans." Principal directs all plan

contributions from "trusteed plans" to the account established for "trusteed plans" and directs all

plan contributions from "non-trusteed plans" to the account established for "non-trusteed plans."

66. Principal has sole custody and control over each of those two accounts. No other entity has authority to direct transfers or otherwise withdraw or move funds from the accounts.

67. After Principal receives plans' contributions in one of these bank accounts, there is a one day lag before Principal transfers the contributions from its accounts and into the investment options that the plans' participants have chosen.

68. Principal takes the plans' contributions from its bank accounts and invests those sums overnight between the time Principal receives the contributions from the plans and the time Principal invests the plans' contributions in the various mutual funds.

69. Principal earns income on its overnight investment of the plans' assets, and Principal keeps that income for itself.

70. Principal does not disclose, or does not adequately disclose, to the plans that it earns income on the plans' assets while Principal is waiting to invest the funds.

71. Principal does not credit to the plans the income that it accrues from its overnight investment of plan assets.

72. As a result of the foregoing conduct, Principal breached the fiduciary duties it owed (by virtue of ERISA § 404(a)(1)(A) (29 U.S.C. § 1104(a)(1)(A))) to the plans such as the Fairmount Park Plan and its participants, and is therefore liable to the Fairmount Park Plan and the Class for its breaches of fiduciary duties to make good to such plans all losses resulting from each such breach, to restore to each such plan all profits Principal realized as a result of each such breach, and is subject to such other equitable and remedial relief as the Court deems appropriate.

73. Also as a result of the foregoing conduct, Principal engaged in prohibited transactions and thus violated ERISA §§ 406(b)(1) and 406(b)(3) (29 U.S.C. §§ 1106(b)(1) & (b)(1)).

WHEREFORE, Plaintiff prays that this Court enter its judgment in favor of Plaintiff and the Class: declaring that Principal's undisclosed retention of the income earned on plan assets violates ERISA; permanently enjoining Principal's acceptance (or, alternatively acceptance without adequate and conspicuous disclosure) of such income; requiring Principal to disgorge to the Fairmount Park Plan and to the Class all such interest Principal has retained;  and awarding attorneys' fees, pre-judgment and post-judgment interest, costs, and such further relief as the Court deems just and proper.

Respectfully submitted,

    s/ Klint L. Bruno
KOREIN TILLERY
Klint L. Bruno
205 N. Michigan Avenue, Suite 1940
Chicago, IL 60601
Direct: (312) 899-5065
Fax: (312) 641-9555

Robert L. King
505 North 7th Street, Suite 3600
St. Louis, Missouri 63101
Phone:  (314) 863-6902
Fax:  (314) 863-7902

KOREIN TILLERY
Stephen M. Tillery
Howard B. Becker
John A. Libra
505 North 7th Street, Suite 3600
St. Louis, Missouri 63101
Phone: (314) 241-4844
Fax: (314) 241-3525

DUNCAN, GREEN, BROWN & LANGENESS
Brent B. Green
Bradley C. Obermeier
400 Locust Street, Suite 380
Des Moines, IA 50309
(515) 288-6440 Telephone
(515) 288-6448 Facsimile

*Attorneys for Plaintiff Joseph Ruppert*