**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| JOSEPH RUPPERT, as Trustee of and on behalf of FAIRMOUNT PARK, INC. RETIREMENT SAVINGS PLAN, and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) | No.: 4:07-CV-344-JAJ-TJS |
| | ) | |
| vs. | ) | |
| | ) | |
| PRINCIPAL LIFE INSURANCE CO., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR RECONSIDERATION OF
NOVEMBER 5, 2009 ENTRY OF JUDGMENT ON THE PLEADINGS**

Twenty days after this Court granted Principal's motion for judgment on the pleadings, the

Eighth Circuit reversed one of the 401(k) revenue sharing district court cases this Court cited in

support of parts of its ruling. This Court's November 5 entry of judgment on the pleadings

cannot stand in light of the Eighth Circuit's decision in that case, *Braden v. Wal-Mart Stores,

Inc.*, 2009 WL 4062105 (8th Cir. Nov. 25, 2009). Specifically, in light of *Braden*, the Court

should vacate its entry of judgment on Ruppert's claims of breach of fiduciary duty (Count I) and

prohibited transactions (Count II) based on Principal's revenue sharing in the Foundation

Options funds.[1]

In *Braden*, the Eighth Circuit held that allegations which are indistinguishable from

Ruppert's were sufficient to withstand a Rule 12(b)(6) motion to dismiss, and the standard that

---

[1] Plaintiff's motion for reconsideration is strictly limited to the Court's entry of judgment on the pleadings insofar as it relates to Principal's revenue sharing in the Foundation Options funds — those that Principal and the Court have referred to as "affiliate" funds. *See*, *e.g.*, 11/05/09 Order at 12. Although Plaintiff believes the Court's ruling regarding Principal's lack of fiduciary duties with respect to the Access Funds (the third-party, "non-affiliated" mutual funds which are genuine investment companies registered with the SEC under the Investment Company Act) was in error, the Eighth Circuit's decision does not bear on that issue and thus is not a basis for seeking consideration of the Court's ruling with respect to the Access Funds.

governs 12(b)(6) motions is the exact same standard that governs a Rule 12(c) motion for

judgment on the pleadings.[2] In *Braden*, a 401(k) plan participant brought ERISA claims against

his employer, Wal-Mart, for allowing the plan's service provider to collect undisclosed revenue

sharing fees. Specifically, Braden

> allege[d] that the mutual fund companies whose funds were included in the Plan shared
> with Merrill Lynch portions of the fees they collected from participants' investments.
> This practice, sometimes called "revenue sharing," is used to cover a portion of the
> costs of services provided by an entity such as a trustee of a 401(k) plan, and is not
> uncommon in the industry. ***Braden alleges, however, that in this case the revenue***
> ***sharing payments were not reasonable compensation for services rendered by Merrill***
> ***Lynch, but rather were kickbacks paid by the mutual fund companies in exchange for***
> ***inclusion of their funds in the Plan***.

*Braden*, 2009 WL 4062105 at *2 (emphasis added).

Like Ruppert here, Braden alleged that the revenue sharing itself constituted a breach of

fiduciary duty, *id*., that Wal-Mart's failure to disclose Merrill Lynch's revenue sharing

constituted a breach of fiduciary duty, *id*., and that Wal-Mart engaged in a section 1106

prohibited transaction in violation of ERISA "by causing the Plan to engage in prohibited

transactions with the trustee, Merrill Lynch." *Id*. at *4, *12.

> The district court dismissed all claims ... on the grounds that Braden had alleged
> insufficient facts to support the claim of imprudent or disloyal management, that
> appellees had no duty to disclose the information Braden sought, and that he had failed
> to show the alleged prohibited transactions with Merrill Lynch were not exempted by
> 29 U.S.C. § 1108.

*Id*. at *2. The Eighth Circuit reversed every single one of those holdings.

There are three noteworthy distinctions between *Braden* and the present case, but none of

them makes any difference for present purposes. One distinction is that the plaintiff in *Braden*

was a plan participant, but that distinction is immaterial because Ruppert, a Trustee of the Plan,

---

[2] "The standard for determining a Rule 12(c) motion is the same as that employed in a Rule 12(b)(6) motion."
*McGhee v. Pottawattamie County*, 475 F. Supp. 2d 862, 880 (S.D. Iowa 2007) (citing *St. Paul Ramsey County Med.
Ctr. v. Pennington,* 857 F.2d 1185, 1187 (8th Cir. 1988)). *Accord Westcott v. City of Omaha*, 901 F.2d 1486, 1488
(8th Cir. 1990) ("we review this 12(c) motion under the standard that governs 12(b)(6) motions").

brought this lawsuit on behalf of the Plan and its participants. The outcome here should thus be the same as in *Braden*.

Another distinction is that the defendant in *Braden* was the plaintiff's employer and plan sponsor, Wal-Mart, a fiduciary of the plan.[3] That distinction makes no difference, however, because even though Principal is a third party service provider to the Fairmount Park Plan, Principal is a fiduciary with respect to the Plan's Foundation Options investments (and to all other plans invested in the Foundation Options). First of all, ERISA explicitly defines "fiduciary": "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan *or exercises any* authority or *control respecting* management or *disposition of its assets* ...." ERISA § 402(21)(A), 29 U.S.C. § 1002(21)(A) (emphasis added).

As this Court has already recognized, the monies invested in the "unregistered mutual fund securities (Foundation Options) are assets of the plan." 11/05/09 Order at 37. Because the Foundation Options are Principal's own proprietary funds which it controls, Principal meets the statutory definition of an ERISA fiduciary.

> Note that this section imposes fiduciary duties only if one exercises *discretionary* authority or control over plan *management,* but imposes those duties *whenever* one deals with plan *assets.* This distinction is not accidental — it reflects the high standard of care trust law imposes upon those who handle money or other assets on behalf of another.

*FirsTier Bank, N.A. v. Zeller*, 16 F.3d 907, 911 (8th Cir. 1994) (emphasis in original). Thus, Principal is a fiduciary with respect to a 401(k) plan's investments, like the Fairmount Park Plan's, in Principal's proprietary, unregistered Foundation Options funds. *Braden* is therefore just as applicable to Principal as to any other plan fiduciary.

---

[3] Braden also sued various Wal-Mart executives involved in the management of the plan. *Id.* at *1.

In addition, Principal has admitted its fiduciary status with respect to the Foundation Options through Rule 30(b)(6) deponents who testified on behalf of Principal and in prior class certification briefing.[4] In opposing class certification, Principal attempted to downplay its admission claiming this is "a classic red herring" and contending that Ruppert was "trying to ... take a narrow slice of acknowledged fiduciary responsibility and bootstrap it into an overarching fiduciary responsibility for every single transaction that involves The Principal and its clients." *See* document #132 at 31 (page 37 of 40). Principal's claim, however, is the red herring.

Plaintiff readily acknowledges that someone may be an ERISA fiduciary with respect to some of its activities and not others. That principle has nothing to do with the present claims, however. First, ERISA section 406 categorically prohibits fiduciaries from engaging in "self-dealing" — specifically, dealing in plan assets for the fiduciary's own benefit. Principal can point to no provision of ERISA or any other authority that permits a fiduciary to engage in such self-dealing merely because it is a fiduciary with respect to limited matters. Fiduciary status which is limited to certain activities does not somehow correspondingly "narrow" that fiduciary's obligation not to engage in the kinds of transactions ERISA prohibits. "[F]iduciary obligations may not be turned on and off like running water." *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1219 (2d Cir. 1987).

Similarly, the obligation of a fiduciary to disclose a service provider's revenue sharing, as recognized in *Braden*, is an obligation directly linked to Principal's twin status as the service provider and fiduciary engaged in revenue sharing; thus, there is a no disconnect between

---

[4] *See*, *e.g.*, Document #132 Principal's 5/30/2008 Memorandum in Opposition to Motion for Class Certification at 31 (page 37 of 40) (noting "The Principal's acknowledgement that, with respect to selection, monitoring and retention of portfolio managers for its separate accounts, it is a co-fiduciary under ERISA"); Ex. A in support of Plaintiff's Motion for Class Certification at 167 lines 11-14 (filed 4/22/2008 under seal) (deposition transcript of Renee Schaaf) ("We serve as cofiduciary for foundation options for — to the extent that it pertains to the selection and the monitoring and the retention of investment managers.").

Principal's fiduciary status and its fiduciary obligation to disclose such revenue sharing. Likewise, the ERISA liability a fiduciary faces for permitting revenue sharing, also recognized in *Braden*, is again directly linked to Principal's status as a fiduciary and service provider and its revenue sharing practices. Just as *Braden* recognized those kinds of allegations state claims for breach of fiduciary duty under ERISA, Ruppert's allegations that Principal engaged in revenue sharing in the Foundation Options and failed to disclose it also necessarily state an ERISA breach of fiduciary duty as well. The fact that Principal may only admit to a "narrow" fiduciary obligation does not defeat Ruppert's claims.

Finally, the prohibited transaction in which Wal-Mart had engaged in *Braden* was a § 406(a) transaction, and in the present case, Plaintiff has alleged that Principal engaged in violations of § 406(b). The difference in the nature of these kinds of prohibited transactions, like the other distinctions between this case and *Braden*, are not any basis for distinguishing *Braden*.

> [S]ection 406(a) prohibits a plan fiduciary from causing transactions between a plan and a party in interest while section 406(b) bars transactions between a plan and its fiduciary including dealing with a plan's assets in the fiduciary's own interest or on behalf of a party whose interests are adverse to a plan or its participants or beneficiaries.

*Blaw Knox Retirement Income Plan v. White Consol. Indus., Inc.*, 998 F.2d 1185, 1190-91 (3d Cir. 1993). The result in *Braden* with respect to the prohibited transaction claim did not turn on the fact that Wal-Mart had caused the Plan to engage in a transaction with an interested party as opposed to having instead dealt in plan assets for Wal-Mart's own benefit. It should likewise make no difference here, either.

In light of *Braden*, this Court should set aside that portion of its November 5 entry of judgment on the pleadings with respect to Ruppert's claims of breach of fiduciary duty (Count I) and prohibited transactions (Count II) based on Principal's revenue sharing in the Foundation Options funds.

**I.  The Eighth Circuit's decision in *Braden v. Wal-Mart Stores, Inc.*, is directly on point and controlling here.**

   **A.  The Eighth Circuit reversed the dismissal of Braden's breach of fiduciary duty claim based on revenue sharing.**

The Eighth Circuit first addressed Braden's claim that by selecting funds that included

revenue sharing payments to Merrill Lynch, Wal-Mart breached its fiduciary duties to the plan.

*Braden*, 2009 WL 4062105 at *7.

> [T]he district court found the complaint inadequate because it did not allege sufficient facts to show how appellees' decision making process was flawed. We conclude that the district court erred in its application of Rule 8. Accepting Braden's well pleaded factual allegations as true, he has stated a claim for breach of fiduciary duty.

*Id*.

> The district court erred in two ways. It ignored reasonable inferences supported by the facts alleged. It also drew inferences in appellees' favor, faulting Braden for failing to plead facts tending to contradict those inferences. Each of these errors violates the familiar axiom that on a motion to dismiss, inferences are to be drawn in favor of the non-moving party.

*Id*. Braden "allege[d] that the funds included in the Plan made revenue sharing payments to the

trustee, Merrill Lynch, and that these payments were not made in exchange for services rendered,

but rather were a quid pro quo for inclusion in the Plan." *Id*.

> Taken as true, and considered as a whole, the complaint's allegations can be understood to assert that the Plan includes a relatively limited menu of funds which were selected by Wal-Mart executives despite the ready availability of better options. The complaint alleges, moreover, that these options were chosen to benefit the trustee at the expense of the participants. If these allegations are substantiated, the process by which appellees selected and managed the funds in the Plan would have been tainted by failure of effort, competence, or loyalty. Thus the allegations state a claim for breach of fiduciary duty.

*Id*. at *8.

> The district court erred in dismissing Braden's fiduciary duty claim because it misapplied the pleading standard of Rule 8, most fundamentally by failing to draw reasonable inferences in favor of the nonmoving party as is required. We conclude that Braden has pled sufficient facts to proceed with his claim for breach of fiduciary duty.

*Id*. at *9.

**B. The Eighth Circuit reversed the dismissal of Braden's breach of fiduciary duty claim based on Wal-Mart's *failure to disclose* revenue sharing.**

The Eighth Circuit then turned to Braden's claim that Wal-Mart had breached its fiduciary duty by failing to disclose Merrill Lynch's revenue sharing fees. *Id*. at \*10.

> Braden claims that appellees breached their duty of loyalty by failing to disclose to participants complete and accurate material information about the Plan funds and the process by which they were selected. His nondisclosure claims can be separated into two groups. One group relates to the performance of and fees charged by the Plan funds and the other to the revenue sharing payments to Merrill Lynch. ... In connection with the revenue sharing payments, Braden alleges that appellees should have disclosed (1) the amounts of the payments; (2) that they were retained by Merrill Lynch and not in turn paid to the Plan; and (3) that the payments were made in exchange for inclusion of certain funds in the Plan.
>
> The district court dismissed these claims, concluding that ERISA does not require disclosure of revenue sharing arrangements and that the other information Braden sought was not material. We disagree.

*Id*. at \*10.

> Braden's allegations are sufficient to state a claim that appellees breached their duty of loyalty by failing to disclose details about the revenue sharing payments. Braden alleges that those payments corrupted the fund selection process—that each fund was selected for inclusion in the Plan because it made payments to the trustee, and not because it was a prudent investment. If true, this information could influence a reasonable participant in evaluating his or her options under the Plan. ... ERISA's duty of loyalty may require a fiduciary to disclose latent conflicts of interest which affect participants' ability to make informed decisions about their benefits.

*Id*. at \*11.

> The district court ... simply concluded that there is no duty to disclose revenue sharing payments. While we agree that there may be no per se duty to disclose such payments, that conclusion is not dispositive here. As we have indicated, materiality is a fact and context sensitive inquiry. On this record, Braden's disclosure claims cannot be decided as a matter of law. For now, he has alleged sufficient facts to support an inference that nondisclosure of details about the fees charged by the Plan funds and the amounts of the revenue sharing payments would "mislead a reasonable [participant] in the process of making an adequately informed decision regarding" allocation of investments in the Plan. *Kalda*, 481 F.3d at 644. The district court therefore erred in dismissing Braden's nondisclosure claims.

*Id*. at \*12.

**C.  The Eighth Circuit reversed the dismissal of Braden's prohibited transaction claim based on revenue sharing.**

Finally, the Eighth Circuit addressed Braden's claim that Wal-Mart had engaged in a

prohibited transaction. *Id*. at \*12.

> Braden alleges that appellees violated these sections of the statute by causing the Plan to engage in prohibited transactions with the trustee, Merrill Lynch. As trustee and as an entity "providing services to" the Plan, Merrill Lynch was a "party in interest" within the meaning of § 1106. 29 U.S.C. § 1002(14). Braden alleges that the revenue sharing payments made by the Plan funds to Merrill Lynch were "kickbacks" in exchange for inclusion in the Plan, rather than reasonable compensation for actual services performed. Accordingly, he argues that these payments were prohibited by §§ 1106(a)(1)(C) and (D) and not exempted by § 1108(b)(2).

> The district court did not directly address the application of § 1106(a)(1) to the revenue sharing payments. It concluded instead that Braden's claims failed because he had not pled facts raising a plausible inference that the payments were unreasonable in relation to the services provided by Merrill Lynch and thus had failed to show they were not exempted by § 1108. This was wrong because the statutory exemptions established by § 1108 are defenses which must be proven by the defendant. Braden does not bear the burden of pleading facts showing that the revenue sharing payments were unreasonable in proportion to the services rendered and the district court erred in dismissing his claim on this basis.

> We conclude that Braden has stated a claim under § 1106(a)(1)(C). The complaint alleges that appellees caused the Plan to enter into an arrangement with Merrill Lynch, a party in interest, under which Merrill Lynch received undisclosed amounts of revenue sharing payments in exchange for services rendered to the Plan. This arrangement amounts to a "direct or indirect ... furnishing of services ... between the plan and a party in interest," 29 U.S.C. § 1106(a)(1)(C). The facts alleged are sufficient to shift the burden to appellees to show that "no more than reasonable compensation [was] paid" for Merrill Lynch's services. 29 U.S.C. § 1108(b)(2).

*Id*. at \*12-13 (some citations omitted). "'[P]rohibited transactions [under § 1106(a)(1)] involve

self-dealing [and the] settled law is that in such situations the burden of proof is always on the

party to the self-dealing transaction to justify its fairness.'" *Id*. at \*13 (quoting *Marshall v.

Snyder*, 572 F.2d 894, 900 (2d Cir. 1978)).

**II.  This Court erred by following the district court decision in *Braden*.**

The Court cited the district court's decision in *Braden* (among other cases) for the proposition that "revenue sharing payments do not require disclosure to plan beneficiaries or other fiduciaries." 11/05/09 Opinion at 22. The Court also cited that decision in support of the entry of judgment on Ruppert's allegations "that Principal's negotiation, acceptance, failure to disclose the amount of, and keeping of the revenue sharing payments, violated Principal's fiduciary duty to plan beneficiaries and participants." *Id*. at 23-24. The Court again cited the *Braden* district court decision for the proposition that:

> the Court must still determine if the fees paid by un-registered affiliate mutual fund securities were reasonable in light of the services performed, as unreasonable fees are demonstrative of a prohibited transaction. If the revenue sharing fees are not unreasonable in relation to the provided services, then there are no section 1106(b)(1), (3) or 1108(b)(2) violations.

*Id*. at 37. The Eighth Circuit reversed the *Braden* district court on both these points.

The Eighth Circuit's response to the first proposition — that "revenue sharing payments do not require disclosure to plan beneficiaries or other fiduciaries" — was, "We disagree." *Braden*, 2009 WL 4062105 at *10. As quoted in full above, the Eighth Circuit explained that allegations that a 401(k) plan fiduciary "fail[ed] to disclose details about the revenue sharing payments" is "sufficient to state a claim" for a breach of fiduciary duty under ERISA. This Court thus erred in relying on and following the district court's decision in *Braden* for the contrary proposition. *Id*. at *11.

The Eighth Circuit's response to the second proposition — that a district court deciding a Rule 12(b)(6) or 12(c) motion "must still determine if the fees paid by un-registered affiliate mutual fund securities were reasonable in light of the services performed" — was equally emphatic.

9

This was wrong because the statutory exemptions established by § 1108 are defenses which must be proven by the defendant. Braden does not bear the burden of pleading facts showing that the revenue sharing payments were unreasonable in proportion to the services rendered and the district court erred in dismissing his claim on this basis.

*Id*. at *12. This Court thus erred in relying on and following the *Braden* district court's decision and other cases for the contrary proposition.

### III.  Like the *Braden* district court, this Court erred by ignoring reasonable inferences supported by the facts Ruppert alleged and by drawing inferences in Principal's favor.

As the Eighth Circuit explained, the *Braden* district court "erred in two ways," *Braden*, 2009 WL 4062105 at *7, and this Court committed those same two errors here. "It ignored reasonable inferences supported by the facts alleged. It also drew inferences in appellees' favor, faulting Braden for failing to plead facts tending to contradict those inferences. Each of these errors violates the familiar axiom that on a motion to dismiss, inferences are to be drawn in favor of the non-moving party." *Id*. at *7.

#### A.  Prohibited Transaction (Count II): Like the *Braden* district court, this Court erred by considering the affirmative defense of reasonable compensation on a Rule 12(c) motion for judgment on the pleadings.

In its November 5 decision, the Court wrote:

[I]n this case, the Court determined that assets used to pay affiliate mutual fund revenue sharing fees did come from assets of the plan, according to the <u>Acosta</u> functional approach. As such, these revenue sharing payments violated section 1106(b)(1) and (3) because the fees benefitted Principal and were used for its own beneficial interest. Despite a seemingly innocuous characterization that the affiliate fees from the Foundation Options funds were, in reality, intra-company accounting, the fact remains that the payments directly came from assets of the plan.

11/05/09 Order at 42. The Court should have ended its analysis there. The Court's conclusion that the revenue sharing payments in the Foundations Options "violated section 1106(b)(1) and (3)" meant that Principal's motion should have been denied with respect to Ruppert's prohibited transaction claim (Count II).

10

The Court's conclusion that the revenue sharing payments in the Foundation Options were prohibited transactions in violation of ERISA section 406(b)(1) and (3) was correct. Those sections of ERISA provide:

> A fiduciary with respect to a plan shall not (1) deal with the assets of the plan in his own interest or for his own account, ... or (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

ERISA §§ 406(b)(1) & (3), 29 U.S.C. §§ 1106(b)(1) & (3). When plan participants' retirement contributions are deposited into various Foundation Options funds, they do not somehow magically lose their character as "plan assets." As the Court held, "revenue sharing payments from unregistered mutual fund securities (Foundation Options) are assets of the plan ...." 11/05/09 Order at 37. Moreover, "because the fees benefitted Principal and were used for its own beneficial interest," *id.* at 42, they constituted "prohibited transactions" in violation of ERISA §§ 406(b)(1) & (3). The conclusion that Ruppert adequately pleaded a prohibited transaction is inescapable, especially now in light of *Braden*.

The Court erred, however, when it continued to consider the issue of the reasonableness of Principal's compensation under ERISA § 408. **First**, *Braden* makes clear that when reviewing an ERISA complaint under Rule 12(b)(6), a district court should not consider a section 408 defense of reasonable compensation. *Braden*, 2009 WL 4062105 at *12 ("[t]his was wrong"). **Second**, Principal has not even pleaded section 408 "reasonable compensation" as an affirmative defense in its Answer. Indeed, Principal never mentioned such a defense in its briefing of its motion for judgment on the pleadings. **Third**, there is substantial reason to question whether reasonable compensation is even a defense to a claim of self-dealing under section 406(b). Other circuits

11

have held it is not.[5] *See*, *e.g.*, *Patelco Credit Union v. Sahni*, 262 F.3d 897, 911 (9th Cir. 2001) ("We conclude that the reasonable compensation provision does not apply to fiduciary self-dealing"); *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1216 (2d Cir. 1987). **Fourth**, there was *no information* before the Court regarding the actual amount of Principal's fees thus making it impossible to assess the reasonableness of any fees. "Generally, whether compensation is 'reasonable' under sections 408(b)(2) and (c)(2) of the Act depends on the particular facts and circumstances of each case." 29 C.F.R. § 2550.408c-2(b)(1).

**Finally**, the Service and Expense Agreement statement on which the Court relied to conclude that Principal takes revenue sharing payments "into consideration when [it] establish[es] the rate of [its] Fees" (11/05/09 Order at 42-43) explicitly applies *only* to Access Funds and *not* to Foundation Options funds.

ARTICLE IV – DISCLOSURES

**Access Funds**

Principal Life Insurance Company (Principal Life) and/or its affiliate, Princor Financial Services Corporation (Princor), receives annual revenue from certain fund families as part of our agreement with the specific mutual fund and/or its distributor. Principal Life and Princor receives a payment from Principal Investors Fund, Inc. (PIF). The following chart illustrates the annual revenue Principal Life receives for the mutual funds you have selected for your Plan. The revenue is calculated as a percentage of the assets that our clients have invested in these mutual funds.

While this revenue does not offset our Fees on a dollar for dollar basis, we do take it into consideration when we establish the rate of our Fees. The return from the Investment you have chosen is not diminished as a result of the payment of this revenue to Principal Life.

---

[5] Although in *Harley v. Minnesota Min. and Mfg. Co.*, 284 F.3d 901 (8th Cir. 2002), the court permitted a section 408(c)(2) "reasonable compensation" defense to defeat a claim of 406(b) self-dealing, the court did not hold that such a defense could always be raised but more narrowly that it could "[a]t least in this situation." *Id.* at 909. One of the cases *Harley* cited was *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1216 (2d Cir. 1987), in which the court held that section 408(c)(2) "exempts the fees paid pursuant to a plan's investment management agreements," (the situation in *Harley*) "but it does not exempt the fees and other compensation that defendants received from companies in which the Plans' assets are invested," like the revenue sharing fees Principal receives here. 829 F.2d at 1216.

Document 159-2, Plaintiff's Ex. 1 at 18. Even assuming this provision (which is outside the

pleadings) were an adequate disclosure of revenue sharing in the Access Funds (a point which

Plaintiff disputes), it doesn't say a word about *any* fee or revenues that Principal might receive

from Foundation Options funds.

For all these reasons, the Court should vacate that portion of its November 5 entry of

judgment on the pleadings applicable to Ruppert's prohibited transactions claim (Count II) based

on Principal's revenue sharing in the Foundation Options funds.

**B. Breach of Fiduciary Duty (Count I): Plaintiff's revenue sharing allegations are indistinguishable from those in *Braden*, and the Court therefore erred in granting judgment on the pleadings on Count I with respect to Principal's revenue sharing in the Foundation Options.**

As a side-by-side comparison of Ruppert's and Braden's allegations demonstrate, the

revenue sharing allegations the Eighth Circuit found sufficient to state a claim for breach of

fiduciary duty under ERISA are virtually identical to Ruppert's allegations here.

| **Braden's Allegations**<br>Counts I & III: Fiduciary Duty | **Ruppert's Allegations**<br>Count I: Fiduciary Duty |
| --- | --- |
| A. "[T]he mutual fund companies whose funds were included in the Plan *shared with Merrill Lynch portions of the fees they collected* from participants' investments." 2009 WL 4062105 at *2.<br><br>B. "Count III alleges that appellees breached their duty of loyalty by *failing to inform Plan participants of ... the amounts of the revenue sharing payments* made to Merrill Lynch." *Id*. | A. "Instead of passing along the 'revenue sharing' kickbacks (or the lower investment management fees) to plans such as the Fairmount Park Plan and their plan participants, *Principal keeps 'revenue sharing' kickbacks* from mutual funds." 11/05/09 Order at 9 (quoting FAC at ¶ 51).<br><br>B. "Principal *does not disclose*, *or does not adequately disclose*, to the plans such as the Fairmount Park Plan, to employers, or to participating employees *the amount of the revenue sharing fees* Principal negotiates with and receives from the mutual funds that are included in its pre-packaged 401(k) plans." *Id*. at 10 (quoting FAC at ¶ 50). *Also see* FAC at ¶ 55(c) (same). |

| **Braden's Allegations**<br>Counts I & III: Fiduciary Duty | **Ruppert's Allegations**<br>Count I: Fiduciary Duty |
|---|---|
| C. "alleges that the funds included in the Plan made revenue sharing payments to the trustee, Merrill Lynch, and that *these payments were not made in exchange for services rendered, but rather were a quid pro quo for inclusion in the Plan*." 2009 WL 4062105 at *7. | C. "The plans such as the Fairmount Park Plan and their participants *receive no extra services from Principal* in addition to the services for which the plan already pays in exchange *for the revenue sharing payments* Principal receives from the mutual funds." *Id*. at 10 (quoting FAC at ¶ 53). "As *a condition for the fund to be included in Principal's pre-packaged 401(k) plans*, Principal negotiates and requires *each mutual fund advisor (or the fund's distributor) to pay a kickback to Principal*, which Principal euphemistically describes as a 'revenue sharing' fee." *Id*. at 5 (quoting FAC at ¶ 22). "Principal selects for inclusion in its pre-packaged 401 (k) plans *only those mutual funds whose advisors (or distributors) agree to make the kickback payment*." *Id*. at 5 (quoting FAC at ¶ 23). |
| D. "appellees should have disclosed | D. "*Principal breached the fiduciary duties it owed*" by "*failing to disclose* (or to disclose adequately) ..." *Id*. at 10 (quoting FAC at ¶ 55 (c)). |
| (1) the amounts of the payments; | (1) "the amount of the *revenue sharing fees*." *Id*. |
| (2) that they were retained by Merrill Lynch and not in turn paid to the Plan; and | (2) "*Principal keeps 'revenue sharing' kickbacks* from mutual funds." *Id*. at 9 (quoting FAC at ¶ 51)); "The '*revenue sharing' kickbacks are thus windfalls to Principal* which serve only to *increase Principal's income at the expense of the plans*" *Id*. at 10 (quoting FAC at ¶ 54); "*keeping revenue sharing kickbacks* from mutual funds (or their advisors) for Principal's own benefit." *Id*. at 11 (quoting FAC at ¶ 55(d)); "*failing to use the revenue sharing kickbacks to defray the reasonable expenses of administering the plan.*" *Id*. at 11 (quoting FAC at ¶ 55(e)). |
| (3) that the payments were made in exchange for inclusion of certain funds in the Plan." *Id*. at *10. | (3) Same allegations as quoted in (C) above. |

14

Because the substance of Ruppert's and Braden's allegations are indistinguishable, the Court should set aside that portion of its November 5 entry of judgment on the pleadings with respect to Ruppert's claims of breach of fiduciary duty (Count I) based on Principal's revenue sharing in the Foundation Options funds.

## CONCLUSION

For all the foregoing reasons and in light of *Braden*, this Court should set aside that portion of its November 5 entry of judgment on the pleadings with respect to Ruppert's claims of breach of fiduciary duty (Count I) and prohibited transactions (Count II) based on Principal's revenue sharing in the Foundation Options funds.

Respectfully submitted,

    s/ Robert L. King
Robert L. King
505 N. 7th Street, Suite 3600
St. Louis, Missouri 63101
Direct:  (314) 863-6902
Fax:  (314) 863-7902

KOREIN TILLERY
Klint L. Bruno
205 N. Michigan Avenue, Suite 1940
Chicago, IL 60601
Direct: (312) 899-5065
Fax: (312) 641-9555

DUNCAN, GREEN, BROWN & LANGENESS
Brent B. Green
Bradley C. Obermeier
400 Locust Street, Suite 380
Des Moines, IA 50309
Phone: (515) 288-6440
Fax: (515) 288-6448

*Attorneys for Plaintiff Joseph Ruppert and the*
*Fairmount Park, Inc. Retirement Savings Plan*

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2009, I filed this instrument electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Joel S. Feldman jfeldman@sidley.com
Mark B. Blocker mblocker@sidley.com
Eric S. Mattson emattson@sidley.com
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603

Brian L Campbell bcampbell@faegre.com
Faegre & Benson
801 Grand Avenue
Suite 3100
Des Moines, IA 50309-8002

    s/ Robert L. King
    Robert L. King