IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| JOSEPH RUPPERT, as trustee of and on behalf of FAIRMOUNT PARK, INC. RETIREMENT SAVINGS PLAN, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>PRINCIPAL LIFE INSURANCE COMPANY,<br><br>    Defendant. | Case No. 4:07-cv-00344-JAJ-TJS<br><br>Judge John A. Jarvey<br><br>Chief Magistrate Judge Thomas J. Shields |

**MEMORANDUM IN SUPPORT OF PRINCIPAL LIFE INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT ON COUNT III**

Defendant Principal Life Insurance Company ("Principal Life"), pursuant to Fed. R. Civ. P. 56 and LR 56(a)(2), respectfully submits the following memorandum of law in support of its Motion for Summary Judgment on Count III of the First Amended Complaint.

**INTRODUCTION**

This lawsuit, which was filed in the fall of 2006 and transferred to this Court in 2007, arises out of Principal Life's provision of services to a 401(k) plan known as the Fairmount Park, Inc. Retirement Savings Plan (the "Plan"). On May 5, 2008, plaintiff Joseph Ruppert, who serves as trustee of that plan, filed a three-count First Amended Complaint. On November 5, 2009, this Court granted Principal Life's motion for judgment on the pleadings on Counts I and II. *See* Dkt. 183: A5 at 16-59.[1] Thus, the only remaining claim in the case is Count III, in which plaintiff alleges that Principal Life violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C § 1101 *et seq.*, by retaining interest it earns on monies that are awaiting transfer to mutual funds and other investment options. This interest, sometimes referred to as

---

[1] Plaintiff has moved for reconsideration of the ruling relating to Counts I and II, but Principal Life has filed an opposition to that motion.

"float," is typically earned for just one day, *i.e*., the time it takes for a contribution to be routed to the investment option in accordance with the direction of the participant and the practices of the mutual fund. The amount at issue for the entire Plan is approximately $20 per year.

Plaintiff alleges that Principal Life violated ERISA because it "does not disclose, or does not adequately disclose" that it earns float income. Am. Compl. ¶ 70: A1 at 4. But the very document by which plaintiff commenced its relationship with Principal Life shows this allegation is not correct. The contract that plaintiff signed with Principal Life in October 2004 plainly discloses, in a section entitled "Compensation," that "[w]e may also earn 'float' on Deposits, loan payments, and other amounts awaiting investment." Ruppert Dep. Ex. 18, at KTSC 004244: A9 at 83. This disclosure not only makes plain that plaintiff's allegation concerning float is incorrect, but as explained below, it also complies with guidance from the Department of Labor about disclosures that it recommends that service providers make about float. Because Principal Life made the recommended disclosures, there is no genuine issue of fact and Principal Life is entitled to summary judgment on Count III. And because Count III is the sole remaining claim in the case, this Court should also enter a final judgment in favor of Principal Life.

## STATEMENT OF FACTS[2]

The Parties. Plaintiff Joseph Ruppert is a trustee of the Plan, a 401(k) plan. SOF ¶ 1. Defendant Principal Life provides various services to 401(k) plans. SOF ¶ 2.

The Agreement. On October 28, 2004, the Plan entered into a contract with Principal Life entitled the "FIA Service and Expense Agreement" (the "Agreement"). SOF ¶ 3. Ruppert signed the Agreement on behalf of the Plan. SOF ¶ 4. Section 3.5 of the Agreement is entitled

---

[2] The facts in this section are taken from Principal Life's LR 56(a)(3) Statement of Facts ("SOF") or the documents contained in the appendix ("A__") required by LR 56(a)(4).

"Compensation."  SOF ¶ 3; A9 at 82.  Within section 3.5, there is a subsection entitled "Other Compensation," which provides as follows:

> Other Compensation.  We may earn compensation in the form of short-term interest ("float") on things like uncashed distribution checks (from the date issued until the date cashed).  We may also earn "float" on Deposits, loan payments, and other amounts awaiting investment, and on Transfers or distributions involving certain non-proprietary funds prior to processing.  The "float" earns money market rates.  "Float" is not directly credited to plans for which we provide Services.  Deposits and Transfers are normally allocated and invested the same day or as soon as possible afterwards, however, there are certain situations where the allocation of these funds will take a longer period of time.  Distribution checks are normally mailed the day they are issued.  The timing of when checks are cashed is beyond our control.

SOF ¶ 3; A9 at 83.

Funds Awaiting Investment and Float.  Fairmount Park employees who participate in the Plan can have a portion of their wages paid into the Plan and invested in the options of their choice.  SOF ¶ 5.  Fairmount Park takes these employee contributions and sends them by electronic bank transfer to one of two Principal Life bank accounts.  SOF ¶ 6.  Once Principal Life receives these electronic bank transfers, it creates and executes trades into the investment options that have been selected by employees.  SOF ¶ 7.  If the transfer is received by 3 p.m. on a business day, those trades generally occur – and the funds are invested – on the same day that Principal Life receives the funds.  SOF ¶ 8.  These purchases are settled via electronic bank transfer the next business day.  SOF ¶ 9.  While trades are awaiting settlement, Principal Life places the monies it received from Fairmount Park into its general corporate bank account.  SOF ¶ 9.  Money in the general corporate bank account earns a federal funds-based rate of interest, which is similar to rates paid on money market funds.  SOF ¶ 10.   The current annual interest rate on funds in the general corporate bank account is 0.25%.  SOF ¶ 10.  Principal Life retains any interest earned on funds in its general corporate bank account.  SOF ¶ 11.  From 2005 to

mid-2009, Principal Life earned $100.33 in interest from monies received from the Plan – approximately $20 per year.  *See* Principal Life's Supp. Resp. to Plaintiff's Third Set of Interrogatories, No. 7 and Ex. C: A3; A4 at 12-15.

## ARGUMENT

I. **Principal Life Is Entitled To Summary Judgment On Count III Because It Makes All Recommended Disclosures Concerning Overnight Investment Earnings.**

In Count III, plaintiff alleges that Principal Life violated ERISA by retaining the interest earned on the overnight investment of monies that have not yet been transferred into the chosen investment options.  Am. Compl. ¶ 67: A1 at 4.  Plaintiff claims that Principal Life acted improperly with respect to this overnight "float" income because it "does not disclose, or does not adequately disclose" that it retains and earns that income.  *Id.* ¶ 70.  This claim is meritless, though, because the contract between the parties explicitly discloses that part of Principal Life's compensation will come from float and discloses Principal Life's practices with respect to float income.  *See Assocs. in Adolescent Psychiatry, S.C. v. Home Life Ins. Co.*, 941 F.2d 561, 569 (7th Cir. 1991) (trust administrator did not violate its duties under ERISA by retaining float when it contracted to receive a portion of its compensation in the form of float).  Moreover, that disclosure complies with the guidance provided by the Department of Labor, the agency with regulatory authority over the relevant provisions of ERISA.

Specifically, section 3.5 of the Agreement, entitled "Compensation," lists the fees and other compensation that Principal Life receives for providing services to the Fairmount Park Plan.  SOF ¶ 3; A9 at 82-83.  In a subsection entitled "Other Compensation," Principal Life explicitly discloses that it earns and retains float income, and that this income is not credited to the Plan.  That section provides that Principal Life may "earn compensation in the form of short-

term interest ('float') . . . on Deposits,[3] loan payments, and other amounts awaiting investment. . . . The 'float' earns money market rates. 'Float' is not directly credited to the plans for which we provide Services." SOF ¶ 3; A9 at 83. The same section also discloses the amount of time that elapses before contributions are invested, explaining that "Deposits and Transfers are normally allocated and invested the same day or as soon as possible afterwards, however, there are certain situations where the allocation of these funds will take a longer period of time." *Id.*

In 2002, the Department of Labor provided guidance to service providers about the disclosures that should be made in connection with float. *See* Field Assistance Bulletin 2002-3 (Nov. 5, 2002) ("DOL Guidance"): A12 at 101-04. In the DOL Guidance, the Department recommended that service providers like Principal Life disclose two pieces of information with respect to float on contributions awaiting investment: (1) the "specific time frames within which cash pending investment direction will be invested," and (2) the rate of float or the manner in which it will be determined. *See* DOL Guidance: A12 at 103-04. The contractual provision quoted above contains all of the disclosures recommended in the DOL Guidance.

    A.  Float on Contributions Awaiting Investment.

For contributions awaiting investment, the Agreement spells out the specific time frames when cash will be invested in the investment option chosen by the participant. The Agreement explains that such amounts "are normally allocated and invested the same day or as soon as possible afterwards." A9 at 83. While the Agreement also discloses that there could be unforeseen exceptions to this specific rule, it plainly notifies plans that contributions are generally invested the same day or the following day.

---

[3] The term "Deposits" is defined in the Agreement to mean the monies the Plan forwards to Principal Life by electronic transfer. *See* A9 at 88 ("'Deposits' means amounts forwarded by, or with regard to, the Plan to the Funding Agent as described in this Agreement and must be an electronic transfer of immediately available funds.").

-5-

B.     <u>The Rate of Float.</u>

The DOL Guidance states that service providers should also disclose the "rate of float or the specific manner in which such rate will be determined." A12 at 103. The Agreement complies by stating that float "earns money market rates." A9 at 83, and that reflects the rate that Principal Life earns on monies retained in its general corporate bank account. SOF ¶¶ 10-11. Use of the term "money market rates" is sufficient because the DOL Guidance specifically notes that investment of monies subject to float are "generally at a money market interest rate." A12 at 103-04.

\*          \*          \*

Because Principal Life provides the disclosures recommended in the DOL Guidance, plaintiff's claim that Principal Life does not properly disclose its float earnings is meritless. Accordingly, there is no genuine issue of material fact, and Principal Life is entitled to summary judgment on Count III.

## **CONCLUSION**

For the reasons stated herein, Principal Life respectfully requests that the Court enter an order granting its motion for summary judgment, and enter judgment in favor of Principal Life with respect to Count III. Moreover, because Count III is the sole remaining claim in the case, this Court should direct the clerk to enter a final judgment pursuant to Fed. R. Civ. P. 58.

Respectfully submitted,

PRINCIPAL LIFE INSURANCE COMPANY

By:   /s/ Eric S. Mattson
      One of its attorneys

Brian L. Campbell
Whitfield & Eddy, PLC
317 Sixth Avenue, Suite 1200
Des Moines, Iowa  50309
Email:  campbell@whitfieldlaw.com
Phone:  (515) 288-6041

Joel S. Feldman
Mark B. Blocker
Eric S. Mattson
Hannah Ruehlman Blase
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois  60603
Email:  jfeldman@sidley.com
        mblocker@sidley.com
        emattson@sidley.com
        hblase@sidley.com
Phone:  (312) 853-7000

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing **Memorandum in Support of Principal Life Insurance Company's Motion for Summary Judgment on Count III** was served on the attorneys listed below through the Court's CM/ECF electronic filing system on February 2, 2010.

| | |
|---|---|
| Klint L. Bruno<br>Korein Tillery LLC<br>205 N. Michigan Ave.<br>Suite 1940<br>Chicago, IL  60601 | Brent B. Green<br>Duncan Green Brown Langeness<br>& Eckley P.C.<br>400 Locust St.<br>Suite 380<br>Des Moines, IA  50309-2331 |
| Rosalind Robertson<br>Kenneth J. Brennan<br>John A. Bruegger<br>Stephen C. Jones<br>SimmonsCooper LLC<br>P.O. Box 521<br>707 Berkshire Blvd.<br>East Alton, IL  62024 | Robert L. King<br>John A. Libra<br>Howard B. Becker<br>Stephen M. Tillery<br>Korein Tillery LLC<br>505 N. Seventh St.<br>Suite 3600<br>St. Louis, MO  63101 |

/s/ Eric S. Mattson