**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| JOSEPH RUPPERT, as trustee of and on behalf of FAIRMOUNT PARK, INC. RETIREMENT SAVINGS PLAN, and on behalf of all others similarly situated, | ) ) ) ) ) | Case No. 4:07-cv-00344-JAJ-TJS |
| Plaintiff, | ) ) ) | Judge John A. Jarvey |
| vs. | ) ) | Chief Magistrate Judge Thomas J. Shields |
| PRINCIPAL LIFE INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF PRINCIPAL LIFE INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT ON COUNTS III AND IV**

Brian L. Campbell
Whitfield & Eddy, PLC
317 Sixth Avenue, Suite 1200
Des Moines, Iowa  50309
Email:  campbell@whitfieldlaw.com
Phone:  (515) 288-6041

Joel S. Feldman
Mark B. Blocker
Eric S. Mattson
Hannah Ruehlman Blase
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois  60603
Email:  jfeldman@sidley.com
          mblocker@sidley.com
          emattson@sidley.com
          hblase@sidley.com
Phone:  (312) 853-7000

# TABLE OF CONTENTS

**Page**

Table of Authorities ......................................................................................................... ii

Introduction ...................................................................................................................... 1

Statement of Facts ........................................................................................................... 1

I.      The Parties ............................................................................................................ 1

        A.      Plaintiff ...................................................................................................... 1

        B.      Defendant ................................................................................................... 2

II.     Revenue Sharing .................................................................................................. 3

III.    Plaintiff's Decisions Regarding the Fairmount Park 401(k) Plan ..................... 4

Procedural History ........................................................................................................... 5

Standard of Review .......................................................................................................... 6

Argument .......................................................................................................................... 7

I.      Principal Life Is Not a Named Fiduciary. ........................................................... 8

II.     Principal Life Is Not a "Functional Fiduciary." ................................................. 8

        A.      The "Functional Fiduciary" Concept and Revenue Sharing. ................... 8

        B.      Principal Life Did Not Exercise Control Over the Management of the Plan
                Or the Disposition of Plan Assets. ......................................................... 10

        C.      Principal Life Did Not Become a Fiduciary by Rendering Investment
                Advice for a Fee. ...................................................................................... 12

        D.      Principal Life Did Not Have Discretionary Authority in the
                Administration of the Plan. ..................................................................... 13

        E.      Principal Life Has Never "Admitted" Fiduciary Status Respecting the
                Plan. ......................................................................................................... 14

        F.      *Braden* Does Not Alter the Analysis. .................................................... 16

Conclusion ..................................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

CASES

*Aetna Health Inc. v. Davila*,
   542 U.S. 200 (2004) ........................................................................................................14

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..........................................................................................................7

*Anoka Orthopaedic Assoc. v. Lechner*,
   910 F.2d 514, 517 (8th Cir. 1990) ..................................................................................14

*Assocs. in Adolescent Psychiatry v. Home Life Ins. Co.*,
   941 F.2d 561 (7th Cir. 1991) ..........................................................................................10

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) .......................................................................................5, 16

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..........................................................................................................6

*Consol. Beef Indus., Inc. v. New York Life Ins. Co.*,
   949 F.2d 960 (8th Cir. 1991) ..........................................................................................12

*Darcangelo v. Verizon Comm'ns, Inc.*,
   292 F.3d 181, 192 (4th Cir. 2002) ...................................................................................9

*Farm King Supply, Inc. v. Edward D. Jones & Co.*,
   884 F.2d 288, 293 (7th Cir. 1989) .................................................................................13

*Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*,
   302 F.3d 18 (2d Cir. 2002) .............................................................................................10

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009), *reh'g denied*, 569 F.3d 708 (7th Cir. 2009), *cert.
   denied*, 130 S. Ct. 1141 (2010) .............................................................................5, 11, 12, 16

*Johnston v. Paul Revere Life Ins. Co.*,
   241 F.3d 623 (8th Cir. 2001) ...........................................................................................9

*Martin v. Feilen*,
   965 F.2d 660 (8th Cir. 1992) .......................................................................................9, 10

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ..........................................................................................................6

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993)..................................................................................10

*Mortgage Lenders Network USA, Inc. v. CoreSource, Inc.*,
    335 F. Supp. 2d 313 (D. Conn. 2004)......................................................14

*Olson v. E.F. Hutton & Co.*,
    957 F.2d 622 (8th Cir. 1992) ....................................................................13

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)....................................................................................7

*Ricci v. DeStefano*,
    129 S. Ct. 2658 (2009)................................................................................6

*Ruppert v. Principal Life Ins. Co.*,
    252 F.R.D. 488 (S.D. Iowa 2008)..............................................................7

*Ruppert v. Principal Life Ins. Co.*,
    No. 4:07-CV-00344, 2009 WL 5667708 (S.D. Iowa Nov. 5, 2009) .........7

*Trustees of the Graphic Comm'ns Int'l Union Upper Midwest Local 1M Health &*
    *Welfare Plan v. Bjorkedal*,
    516 F.3d 719 (8th Cir. 2008) ....................................................................9

*Walsh v. Principal Life Ins. Co.*,
    266 F.R.D. 232 (S.D. Iowa 2010) .....................................................8, 9, 11

STATUTES

26 U.S.C. § 401(k) .....................................................................................1

29 U.S.C. § 1002(21) ..........................................................................*passim*

29 U.S.C. § 1102(a)(2) ...............................................................................8

29 U.S.C. § 1106(b)(1) & (3).......................................................................1

29 U.S.C. § 1109(a) ....................................................................................1

Iowa Code § 508A.1(1)...............................................................................2

OTHER AUTHORITIES

29 C.F.R. § 2509.75-8, Q-D-2 ..................................................................14

29 C.F.R. § 2510.3-21(c) ......................................................................13, 14

Fed. R. Civ. P. 56(c)(2)...............................................................................6

**Introduction**

As a result of this Court's prior rulings, all that remains in this case are two individual claims under the Employee Retirement Income Security Act ("ERISA").  This motion seeks summary judgment on those claims.

Both of the remaining claims involve the way defendant Principal Life Insurance Company ("Principal Life") internally accounts for revenue from investment options known as "Foundation Options" – investment options offered by Principal Life or one of its affiliates. Plaintiff Joseph Ruppert asserts that Principal Life (1) violated its alleged fiduciary duty under ERISA by allowing for intra-corporate "revenue sharing" with respect to Foundation Options (Count III), and (2) engaged in prohibited transactions as an alleged ERISA fiduciary by accepting this intra-corporate "revenue sharing" (Count IV).

To prevail on either claim, plaintiff must prove that Principal Life was acting as an ERISA fiduciary when taking the actions that are the subject of his complaint.  *See* 29 U.S.C. § 1109(a); *id.* § 1106(b)(1) & (3).  As explained below, because the evidence shows that Principal Life is *not* a fiduciary in any relevant way, Principal Life is entitled to summary judgment.

**Statement of Facts[1]**

I.     THE PARTIES

  A.     **Plaintiff**

Fairmount Park, Inc. owns and operates a racetrack near St. Louis.  SOF ¶ 1.  Like many other employers, it offers its employees a retirement benefit in the form of a "401(k) plan," so called because it is intended to comply with section 401(k) of the Internal Revenue Code.  SOF ¶ 2; *see also* 26 U.S.C. § 401(k).  Participants (employees) in such plans can contribute pre-tax

---

[1] The facts in this section are taken from Principal Life's LR 56(a)(3) Statement of Facts ("SOF") or the documents contained in the appendix ("A__") required by LR 56(a)(4).

earnings to their plan account; in addition, some employers match employee contributions.  SOF ¶ 3; Brown Dep. (10/11/07) at 46: A59.  The contributions are invested in the investment options chosen by the participant.  SOF ¶ 3.  Eventually, the contributions (plus any investment gains) may be used as retirement income.  *Id.*

Plaintiff Joseph Ruppert is the trustee and named fiduciary of Fairmount Park's 401(k) plan.  SOF ¶ 4.  He assumed this role in 2000 when, as Vice President and Chief Financial Officer of Fairmount Park, he moved the plan's investments from another service provider to Principal Life.  *Id.*

B.     **Defendant**

Principal Life provides recordkeeping and other services to 401(k) plans.  SOF ¶ 5.  Its primary role is to provide administrative services to the plans and give them access to investment options.  *Id.*  The plans, in turn, make their chosen investment options available to participants. *Id.*

Principal Life offers two investment "platforms," known as the "Access Funds" and "Foundation Options" platforms.  SOF ¶ 6.  On the "Access Funds" platform are approximately 1,400 mutual funds offered by various non-Principal companies, such as Vanguard and Fidelity. SOF ¶ 7.  Plan fiduciaries such as plaintiff can choose to make some subset of these funds available to participants in their plans.

The "Foundation Options" platform generally consists of investment options offered by Principal Life or one of its affiliates.  SOF ¶ 8.  Foundation Options include sixty to seventy "separate accounts," a type of account at an insurance company that is protected from general creditors of the insurance company.  *Id.*; Iowa Code § 508A.1(1).  Those separate accounts, in turn, may invest in either a single mutual fund or a portfolio of securities and other investments. SOF ¶ 8.

II.   <u>REVENUE SHARING</u>

For purposes relevant to this case, Principal Life earns revenue in two primary ways.

First, Principal Life charges "hard dollar" fees to some 401(k) plans.  For example, a plan may pay a fixed amount of money to Principal Life each year.  SOF ¶ 9.  Fairmount Park paid Principal Life $11,674 per year.  *Id.*

Second, Principal Life receives revenue sharing payments.  Here is how revenue sharing works:  Mutual fund companies incur various expenses.  These expenses are recouped through an "expense ratio," *i.e.*, a percentage of the assets in the fund that are withheld from the investor's return.  SOF ¶ 10.  If a fund has an expense ratio of 1 percent, and the fund's investments earn a gross 6 percent return, the investor would receive a 5 percent return, with the mutual fund company retaining the remaining 1 percent.  Mutual fund companies disclose the expense ratio to investors in a prospectus.  *Id.*  For example, a 2007 Principal Investors Fund prospectus discloses an expense ratio of 1.16 percent during three prior years.  *Id.*

With respect to mutual funds on the Access Funds platform, Principal Life receives from the mutual fund company a portion of its expense ratio.  SOF ¶ 11.  Due to an earlier ruling from this Court, the claims based on this form of revenue sharing (Counts I and II) are no longer at issue in this case.  Dkt. 183.

The concept is similar for Foundation Options, but "revenue sharing" is a misnomer in this context because the money never leaves the Principal corporate family.  SOF ¶ 12.  Instead, as is the case with respect to the Fairmount Park Plan, "When it's a separate account on our group annuity platform, there is no money changing hands.  It's all revenue of Principal Life [Insurance] Company."  *Id.*  As one Principal Life executive explained, "Those are our funds so there is no revenue-sharing."  SOF ¶ 12; *see also id.* ("On the separate accounts there is no

transfer of money from a fund to any other entity because that's all inside the wrapper of Principal Life Company").

III.    PLAINTIFF'S DECISIONS REGARDING THE FAIRMOUNT PARK 401(K) <u>PLAN</u>

Plaintiff hired Principal Life to provide certain services to the Fairmount Park 401(k) plan.  SOF ¶ 13.  On behalf of the Plan, plaintiff signed an agreement stating that "[n]othing in this Agreement, nor in the provision of Services, makes [Principal Life] a party to, or a fiduciary or administrator regarding, the Plan or any Plan Entity."  SOF ¶ 13.[2]

From the beginning, plaintiff took an active role in selecting investment options for the Fairmount Park plan and made the ultimate decisions about what options to offer to plan participants.  SOF ¶ 14.  According to plaintiff, when Fairmount Park hired Principal Life in 2000, a Principal employee recommended that plaintiff choose Principal funds.  SOF ¶ 15.  But plaintiff rejected that suggestion and "ultimately chose some Principal funds and some non-Principal funds."  *Id*.  In subsequent years, plaintiff reviewed the performance of the plan's various investment options and, at times, directed Principal Life to change the plan's investment line-up.  SOF ¶ 16.  He exercised his "own independent judgment in making those decisions."  SOF ¶ 12.  "[T]he only person who makes the final decision on these changes is me," he testified.  *Id*.

For example, in December 2002, plaintiff decided to freeze participant investments in three funds, based on his analysis that the funds had performed poorly.  SOF ¶ 18.  In late 2003, plaintiff again altered the plan's investment lineup by deleting certain funds.  SOF ¶ 19.  He based that decision on his analysis of the funds' ratings, expense ratios, and performance

---

[2] The contract also provided that Principal Life was "a co-fiduciary with regard to the selection, monitoring, and retention of the portfolio managers for its Separate Accounts."  KTSC 4246: A202.  The reasons why this statement is insignificant for purposes of this motion are explained *infra* at 14-16.

compared to other funds.  *Id*.  And in October 2004, plaintiff directed Principal Life to close numerous funds and open others in their place.  SOF ¶ 20.

## Procedural History

Plaintiff filed this case as a putative class action in the U.S. District Court for the Southern District of Illinois on November 8, 2006.  The case was subsequently transferred to this Court.

On August 27, 2008, after extensive discovery, extensive briefing and oral argument, this Court denied plaintiff's motion for class certification.  Dkt. 148.  On October 28, 2008, the Eighth Circuit denied plaintiff's petition for an interlocutory appeal of that order.  Dkt. 152.  This Court has twice rejected plaintiff's subsequent attempts to relitigate the ruling on class certification.  Dkts. 204 & 221.

After this Court denied class certification, Principal Life moved for judgment on the pleadings.  Dkt. 156: A46-48.  In that motion, Principal Life did not challenge plaintiff's allegation that Principal Life was a fiduciary under ERISA, as that question presented issues that required a review of the record.  Instead, Principal Life relied on *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), *reh'g denied*, 569 F.3d 708 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 1141 (2010), in which the court (1) rejected "the proposition that there is something wrong, for ERISA purposes," with revenue sharing, (2) found that revenue sharing "violates no statute or regulation," (3) held that there is no duty to disclose intra-corporate revenue sharing, and (4) found that the payments used to make such intra-corporate payments are not plan assets.  556 F.3d 584-86.

This Court granted Principal Life's motion on November 5, 2009.  Dkt. 183.  But in the wake of the Eighth Circuit's ruling in *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009), this Court vacated its order "only as to the Foundation Options mutual funds."  Dkt. 205,

at 1. Noting the court's obligation to "accept the plaintiff's factual allegations as true," *id.* at 5 (internal quotation marks omitted), this Court held that, under *Braden*, the complaint included enough allegations to state a claim under ERISA. *Id.* at 24. Again, however, the question of Principal Life's fiduciary status was not at issue in the motion for judgment on the pleadings.

Finally, on May 27, 2010, this Court granted Principal Life's motion for summary judgment on plaintiff's claim on Count V, concerning the overnight "float" interest earned on participant contributions awaiting investment. Dkt. 215.

As a result of the foregoing rulings, judgment has been entered in favor of Principal Life on Counts I, II and V of the second amended complaint,[3] and class certification has been denied as to all claims. This motion seeks judgment on the two remaining individual claims in Counts III and IV and the entry of final judgment in favor of Principal Life.

## **Standard of Review**

Summary judgment should be granted if "there is no genuine issue as to any material fact" and Principal Life "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Because plaintiff bears the burden of proof at trial, Principal Life need only show that plaintiff cannot establish the existence of any element essential to his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The burden then shifts to plaintiff to "designate specific facts showing that there is a genuine issue for trial." *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009) (citiation omitted). Plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Rather, he must adduce evidence that would allow a verdict in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[3] Throughout this brief, citations to the "Complaint" or "Compl." refer to plaintiff's second amended complaint. *See* Dkt. 208: A1-20. Citations to the "Answer" refer to Principal Life's answer to the second amended complaint. *See* Dkt. 213: A21-45.

**Argument**

In ERISA cases, a "threshold question" is whether the defendant was "acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Here, the "action subject to complaint" is the receipt and retention of "revenue sharing" with respect to Foundation Options. Thus, in order to prevail on either of his remaining claims, plaintiff bears the burden of proving that Principal Life was acting as an ERISA fiduciary when it received revenue sharing payments on Foundation Options. Plaintiff appears to concede that he bears this burden. Dkt. 208 ¶¶ 81, 89-90: A15-16.

Until now, Principal Life has not challenged plaintiff's allegations about its fiduciary status. *See, e.g.*, Dkt. 183, at 15 ("For purposes of this motion only, Principal has not denied its ERISA fiduciary status . . . ."). Accordingly, this Court has, as required by the rules, treated these allegations of fiduciary status as true. *See Ruppert v. Principal Life Ins. Co.*, No. 4:07-CV-00344, 2009 WL 5667708, at *8 (S.D. Iowa Nov. 5, 2009) (noting that Principal Life had not denied fiduciary status "for purposes of this motion only"); *Ruppert v. Principal Life Ins. Co.*, 252 F.R.D. 488, 499 (S.D. Iowa 2008) ("Principal's fiduciary status, *to the extent it exists . . . .*") (emphasis added).[4]

The question of whether Principal Life acted as a fiduciary when it received revenue sharing is thus being presented to this Court for the first time. As explained below, Principal

---

[4] In its order granting Principal Life's motion for summary judgment on plaintiff's "float" claim (Count III), this Court noted plaintiff's effort to establish fiduciary status. Dkt. 215, at 9 n.5. As it had in previous orders, this Court treated plaintiff's allegation as true, but stated that "there is no need for a further discussion on Principal's duties as a fiduciary." *Id.* The decision not to analyze fiduciary duties was correct, as Principal Life's motion did not address plaintiff's fiduciary allegations. Now, however, this Court finally has the opportunity to examine the evidence, and there can be no doubt that Principal Life is not a fiduciary in any relevant respect.

Life did *not* act as a fiduciary in any way relevant to revenue sharing.  Because this basic element of plaintiff's claims is missing, Principal Life is entitled to judgment on Counts III and IV.

I.      PRINCIPAL LIFE IS NOT A NAMED FIDUCIARY.

ERISA provides that a person can become a fiduciary by being so designated.  29 U.S.C. § 1102(a)(2).  Plaintiff was named as such a fiduciary; Principal Life was not.  Indeed, plaintiff signed an agreement that specifically provided that Principal Life would not serve as a fiduciary with respect to the Fairmount Park Plan.  SOF ¶ 13.

II.     PRINCIPAL LIFE IS NOT A "FUNCTIONAL FIDUCIARY."

Because it is not a named fiduciary, the only way Principal Life could be found liable is if it were found to be a "functional fiduciary."  A "functional fiduciary" is a person who performs one of the functions listed in ERISA's definition of "fiduciary," 29 U.S.C. § 1002(21)(A).  *See Walsh v. Principal Life Ins. Co.*, 266 F.R.D. 232, 241 (S.D. Iowa 2010).  As explained below, the evidence shows that Principal Life did not perform any of these functions in connection with the receipt of revenue sharing from Foundation Options.

A.      **The "Functional Fiduciary" Concept and Revenue Sharing.**

Under ERISA, a person becomes a fiduciary "to the extent" he does any of the following:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,

> (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or

> (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

This statutory definition contains an important qualifier:  a person is a fiduciary only "to the extent" he does the enumerated things.  As a result, fiduciary status "'is not an all-or-nothing concept.'"  *Trustees of the Graphic Comm'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 732 (8th Cir. 2008) (quoting *Darcangelo v. Verizon Comm'ns, Inc.*, 292 F.3d 181, 192 (4th Cir. 2002)).  Instead, courts must analyze "whether a person is a fiduciary with respect to the particular activity in question."  *Johnston v. Paul Revere Life Ins. Co*., 241 F.3d 623, 632 (8th Cir. 2001).  This means that even if a person is a fiduciary for some purpose, he does not become a fiduciary for all purposes, such that any action he takes with respect to the plan is a fiduciary action.  *Martin v. Feilen*, 965 F.2d 660, 669 (8th Cir. 1992); *Walsh*, 266 F.R.D. at 241.

The Department of Labor, which has primary responsibility for enforcing ERISA, has clarified this point in the revenue sharing context with respect to service providers like Principal Life.  It has explained that even if a service provider acts in a fiduciary capacity with respect to some functions, it may lawfully accept revenue sharing payments as long as it does not act in a fiduciary capacity with respect to that practice.  For example, in Opinion 97-15A, 1997 ERISA LEXIS 18 (May 22, 1997), the Department was asked to determine whether Frost Bank, which acted as a trustee for – and therefore served as a fiduciary of – pension plans, could nonetheless accept and retain revenue sharing.  Like Principal Life, Frost provided a platform of investment options from which pension plans could select; and as was the case with Fairmount Park, the plans chose which subset of those options would be offered to participants.  The Department concluded that even though "Frost, as trustee, is a fiduciary" (*id*. at *7), it did not act in a fiduciary capacity when accepting revenue sharing payments because it did not have authority or control to cause plans to invest in the specific mutual funds (*id*. at *12-13).  Instead, as here, the ultimate decision about whether to invest in specific funds was left to the plan and its

participants.  *See also* Opinion Letter 97-16A, 1997 ERISA LEXIS 17, at *10-11 (May 22, 1997)

(analyzing whether an entity "does not exercise any authority or control to cause a plan to invest

in a mutual fund"); Opinion Letter 2003-09A, 2003 ERISA LEXIS 11, at *16 (June 25, 2003)

(no ERISA violation "when the decision to invest in such funds is made by a fiduciary who is

independent of [the service provider].").

> B.  **Principal Life Did Not Exercise Control Over the Management of the Plan Or the Disposition of Plan Assets.**

Subsection (i) of ERISA's definition of fiduciary provides that "a person is a fiduciary

with respect to a plan *to the extent* … he *exercises* any discretionary authority or discretionary

control respecting management of such plan or *exercises* any authority or control respecting

management or disposition of its assets."  29 U.S.C. § 1002(21)(A)(i) (emphasis added).  This

subsection addresses two distinct activities:  discretionary management of the plan, and the

management or disposition of the plan's assets.  Because the activity at issue in this case

involves the investment of assets, the relevant portion of subsection (i) is the part that concerns

the management or disposition of plan assets.  *See Harris Trust & Sav. Bank v. John Hancock

Mut. Life Ins. Co.*, 302 F.3d 18, 28 (2d Cir. 2002) ("management or disposition" language in

subsection (i) refers to "common transactions in dealing with a pool of assets," including

"selecting investments").

To begin with, plaintiff cannot show that Principal Life exercised "discretionary

authority or discretionary control" over the management or disposition of plan assets.  The terms

"discretionary authority" and "discretionary control" have a special meaning under ERISA.

They require a showing of "real power to control what the plan did."  *Mertens v. Hewitt Assocs.*,

508 U.S. 248, 262 (1993); *see also Assocs. in Adolescent Psychiatry v. Home Life Ins. Co.*, 941

F.2d 561, 570 (7th Cir. 1991) ("[T]he power to act for the plan is essential to status as a fiduciary

under ERISA."); *Martin*, 965 F.2d at 668-69.  As a corollary, "fiduciary liability does not attach

whenever third party service providers come into contact with ERISA plan assets." *Walsh*, 266 F.R.D. at 249 (collecting cases).

The evidence here shows that plaintiff – not Principal Life – possessed the ultimate power to control what investment options the plan chose. Indeed, almost as soon as plaintiff hired Principal Life, he rejected a suggestion from a Principal Life employee that he choose only Principal funds. SOF ¶ 15. Time and again, plaintiff added or deleted funds from the plan's lineup. SOF ¶ 16. In each case, plaintiff made the final decision on investments. SOF ¶ 17; *see also id.* ("in the end it's the plan sponsor who makes the choice about what investments to put into their lineup"). As plaintiff acknowledged, "the only person who makes the final decision on these changes is me." *Id.*

Although plaintiff claims that he relied on Principal Life for recommendations about which funds to choose, this is not enough to confer fiduciary status under 29 U.S.C. § 1002(21)(A)(i). The question is who had the "final say" in choosing investments. *Hecker*, 556 F.3d at 583. In other words, the test is "actual control" – fiduciary status "cannot be based solely on an ambiguous degree of influence over another person who retains control over the assets." *Walsh*, 266 F.R.D. at 250. In the only Court of Appeals decision addressing whether a service provider to 401(k) plans is a fiduciary under ERISA, the court said, "The fact that [the 401(k) plan] may have discussed this decision, or negotiated about it, with Fidelity Trust does not mean that Fidelity Trust had discretion to select the funds for the Plans." *Hecker*, 556 F.3d at 583. For this same reason, Principal Life is not a fiduciary under the first prong of ERISA's definition of "fiduciary" – it does not have the final say over investment decisions.

Finally, plaintiff has alleged that Principal Life exercised control over plan assets by including only a limited number of investment options on the Access and Foundation platforms. *See, e.g.,* Dkt. 208 ¶¶ 12-16, 33, 37(g): A3, 5-6. But this is not enough to show an exercise of

"control."  In *Hecker,* Fidelity – the service provider that performed functions like those that Principal Life performs here – limited the plan's selection of funds to those provided by a related Fidelity entity, and the Seventh Circuit rejected the notion that limiting the funds available on the platform constituted an exercise of control.  556 F.3d at 583 ("Plaintiffs point to no authority that holds that limiting funds to a sister company automatically creates discretionary control sufficient for fiduciary status.").  Similarly, the Department of Labor opined in an amicus brief in *Hecker* that a service provider does not become a fiduciary "merely by virtue of developing and presenting a list of investment options to [a plan] for its selection as a fiduciary."  Amicus Br. at 22-23: A239-40.

> C.   **Principal Life Did Not Become a Fiduciary by Rendering Investment Advice for a Fee.**

Plaintiff also cannot show that Principal Life gave him "investment advice for a fee or other compensation," as that term is used in 29 U.S.C. § 1002(21)(A)(ii).  As a threshold matter, plaintiff cannot point to any "fee or other compensation" that Principal Life received in exchange for providing any advice (as opposed to the fees it received for providing administrative services).  *Cf. Consol. Beef Indus., Inc. v. New York Life Ins. Co.*, 949 F.2d 960, 964 (8th Cir. 1991) (fees received for selling financial products did not create fiduciary status under § 1002(21)(A)(ii)).

Equally important, to show that a defendant is a fiduciary under this prong of the definition of fiduciary, a plaintiff must go beyond showing that "investment advice," in the lay sense of the term, was given, and allege at least one of two additional elements.  29 C.F.R. § 2510.3-21(c).  One element requires a plaintiff to demonstrate that the defendant had "discretionary authority or control" over the purchase and sale of plan assets.  *Id.* § 2510.3-21(c)(ii)(A).  This may happen, for example, when a broker trades a client's investments without

permission from the client. *See Olson v. E.F. Hutton & Co.*, 957 F.2d 622, 627 (8th Cir. 1992). Nothing like that happened here.

A plaintiff can also establish fiduciary status by showing that (1) the defendant made investment recommendations to the retirement plan on a regular basis, (2) the investment advice was given pursuant to an agreement with the plan that the defendant would give such advice, (3) the advice served as the primary basis for investment decisions with respect to plan assets, and (4) the investment advice was individualized to the needs of the plan. 29 C.F.R. § 2510.3-21(c)(ii)(B). The Eighth Circuit has held this section should be analyzed "by first determining 'whether under the regulation there existed a mutual agreement or understanding between the parties that [the alleged fiduciary's] advice would be the primary basis for the Plan's investment decisions.'" *Olson*, 957 F.2d at 626 (quoting *Farm King Supply, Inc. v. Edward D. Jones & Co.*, 884 F.2d 288, 293 (7th Cir. 1989)).

There is no evidence here of a "mutual agreement . . . or understanding" between Principal Life and plaintiff that any "advice" from Principal Life would be the "primary basis" for plaintiff's decisions; nor is there evidence that any "advice" given to plaintiff was "individualized" to the needs of the plan. 29 C.F.R. § 2510.3-21(c)(ii)(B). It may be true that Principal Life provided plaintiff with data about the various investment options, but that does not equate to a "meeting of the minds" along the lines required by the statute. *See Olson*, 957 F.2d at 626 (citation omitted). As a result, plaintiff cannot point to evidence that would show that Principal Life rendered investment advice for a fee, as those terms are used in ERISA.

D.   **Principal Life Did Not Have Discretionary Authority in the Administration of the Plan.**

Finally, Principal Life is not a fiduciary under the subsection of the definition of "fiduciary" that "describes those individuals who have actually been granted discretionary authority, regardless of whether such authority is ever exercised." *Olson*, 957 F.2d at 625, citing

-13-

29 U.S.C. § 1002(21)(A)(iii).  Plaintiff cannot point to any evidence that he "actually granted" Principal Life discretionary authority over the management of the Fairmount Park plan; the things he cites are ministerial activities that do not amount to anything approaching "discretion." *See id*. at n.3 ("It is well established that one who performs only ministerial tasks is not cloaked with fiduciary status.") (citing *Anoka Orthopaedic Assoc. v. Lechner,* 910 F.2d 514, 517 (8th Cir. 1990)); *see also* 29 C.F.R. § 2509.75-8, Q-D-2 ("a person who performs purely ministerial functions . . . is not a fiduciary").

Moreover, plan administration concerns activities such as the payment of claims and evaluation of plan participant's claims for benefits, matters that are not at issue here.  *See, e.g., Aetna Health Inc. v. Davila*, 542 U.S. 200, 220 (2004); *Mortgage Lenders Network USA, Inc. v. CoreSource, Inc.*, 335 F. Supp. 2d 313, 322 (D. Conn. 2004).  Plan administration does not encompass the arrangements by which plans make investments – if it did, it would essentially render subsection (i), which deals specifically with investments (and is discussed above), irrelevant.

E.    **Principal Life Has Never "Admitted" Fiduciary Status Respecting the Plan.**

Throughout this litigation, plaintiff has argued that the fiduciary inquiry may be short-circuited because Principal Life has "admitted" that it is a fiduciary.  *See, e.g*., Dkt. 187-1, at 4; Dkt. 114, at 8-9.  Plaintiff seems to want this Court to ask whether Principal Life might be characterized as a fiduciary under ERISA for *any* purpose, and if the answer is yes, to evaluate *every* action taken by Principal Life – including the receipt of revenue sharing payments – as if it were a fiduciary with respect to *all* aspects of its business.  As explained above (*see supra* at 8-10), that is not how ERISA evaluates whether conduct is fiduciary in nature.

The basis for plaintiff's argument is Principal Life's role as a co-fiduciary "with respect to selection, monitoring and retention of portfolio managers."  *See* Dkt. 187-1, at 4 n.4.  But

because the "selection, monitoring and retention of portfolio managers" – the only function for which Principal Life has assumed a fiduciary role – has nothing to do with the receipt of revenue sharing, this so-called "admission" does not help plaintiff with respect to the claims at issue. Plaintiff's argument would have some currency if he were contending that Principal Life improperly selected or retained one of the portfolio managers, but he cannot use fiduciary conduct from one set of activities to establish that conduct in an unrelated activity is fiduciary in nature. While plaintiff "readily acknowledges . . . someone may be an ERISA fiduciary with respect to some of its activities and not others," *id*. at 4, his own argument violates this principle.

Renee Schaaf, a Principal Life executive, explained this at her deposition:

> Q.    So with respect to all [F]oundation options funds, The Principal is a fiduciary, a cofiduciary?
>
> A.    For that narrowly prescribed definition of services for those funds. Not in the broad context of being a fiduciary for the plan.
>
> Q.    What does that mean?
>
> A.    We are a cofiduciary limited to issues arising from the selection, the monitoring and retention of investment managers for [F]oundation options. Very narrow definition. Much different than the broad context of being a fiduciary for the plan.

Schaaf Dep. at 167-68: A88; *see also* Bowman Dep. at 196: A56.

Given plaintiff's recognition that one can be a fiduciary for a limited purpose, it is noteworthy that plaintiff has *never* argued that his claims involve a challenge to "the selection, monitoring, and retention of the portfolio managers." Instead, plaintiff contends that the limited nature of Principal Life's fiduciary role is irrelevant because "Principal can point to no provision of ERISA or any other authority that permits a fiduciary to engage in . . . self-dealing merely because it is a fiduciary with respect to limited matters." Dkt. 187-1, at 4. By plaintiff's topsy-turvy logic, the scope of a person's fiduciary responsibility would be entirely irrelevant where a

breach of fiduciary duty is alleged.  But this Court must address whether Principal Life owed

fiduciary duties "with respect to the actions at issue" *before* it turns to the question of breach; it

cannot simply mix the two concepts, as plaintiff suggests.  *Hecker*, 556 F.3d at 583.

F.    ***Braden* Does Not Alter the Analysis.**

Finally, plaintiff has suggested that *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th

Cir. 2009), affects the fiduciary analysis because *Braden* involved revenue sharing.  Dkt. 187-1

at 4-5.  However, fiduciary status was uncontested in *Braden*.  588 F.3d at 594-95.  The

defendant was the named fiduciary (equivalent to plaintiff here) that selected the funds to be

offered to plan participants.  *Id*. at 589.  Merrill Lynch, the service provider in *Braden* (and the

party analogous to Principal Life) was not even a party.  *See id.  Braden* thus offers no guidance

on whether Principal Life acted as a fiduciary.

## Conclusion

Principal Life respectfully requests that this Court enter judgment in favor of Principal

Life on Counts III and IV of the Second Amended Complaint and enter a final judgment in favor

of Principal Life.

Respectfully submitted,

PRINCIPAL LIFE INSURANCE COMPANY

By:      /s/ Eric S. Mattson
              One of its attorneys

Brian L. Campbell
Whitfield & Eddy, PLC
317 Sixth Avenue, Suite 1200
Des Moines, Iowa  50309
Email:  campbell@whitfieldlaw.com
Phone:  (515) 288-6041

Joel S. Feldman
Mark B. Blocker
Eric S. Mattson
Hannah Ruehlman Blase
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois  60603
Email:  jfeldman@sidley.com
              mblocker@sidley.com
              emattson@sidley.com
              hblase@sidley.com
Phone:  (312) 853-7000

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing Memorandum in Support of Principal Life Insurance Company's Motion for Summary Judgment was served on all attorneys through the Court's CM/ECF electronic filing system on June 29, 2010.


<u>/s/ Eric S. Mattson</u>