IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| JOSEPH RUPPERT, as trustee of and on behalf of FAIRMOUNT PARK, INC. RETIREMENT SAVINGS PLAN, and on behalf of all others similarly situated, | ) ) ) ) |
| | ) Case No. 4:07-cv-00344-JAJ-TJS |
| Plaintiff, | ) ) Judge John A. Jarvey |
| vs. | ) ) Chief Magistrate Judge Thomas J. Shields |
| PRINCIPAL LIFE INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) |

**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56(a)(3), defendant Principal Life Insurance Company submits this statement of undisputed material facts in support of its Motion for Summary Judgment on Counts III and IV.

1. Fairmount Park, Inc. owns and operates a racetrack near St. Louis. Dkt. 163-1, at 6; Fairmount Park Racetrack Directions (available at http://www.fairmountpark.com/directions.htm): A244.

2. Like many other employers, Fairmount Park, Inc. offers its employees a retirement benefit in the form of a "401(k) plan." Ruppert Dep. (10/25/07) at 12, 29-31: A69-71.

3. Participants in 401(k) plans can contribute pre-tax earnings to their plan account. Dkt. 208 ¶ 6: A2; Dkt. 213 ¶ 6: A22. These contributions are invested in the investment options chosen by the participant. Dkt. 208 ¶ 6: A2; Dkt. 213 ¶ 6: A22; Button Dep. (10/10/07) at 8: A63. Eventually, the contributions (plus any investment gains) may be used as a source of retirement income. Dkt. 208 ¶ 6: A2; Dkt. 213 ¶ 6: A22.

4.      Plaintiff Joseph Ruppert is the trustee and named fiduciary of Fairmount Park's 401(k) plan. Dkt. 208 ¶ 1: A1; Ruppert Dep. (10/25/07) at 41: A72. He assumed this role in 2000 when, as Vice President and Chief Financial Officer of Fairmount Park, he moved the plan's investments from another service provider to Principal Life. Ruppert Dep. (10/25/07) at 12, 29-31, 83: A69-71, 82; PRI 9158-72: A100-14.

5.      Principal Life provides recordkeeping and other services to 401(k) plans. Dkt. 208 ¶¶ 5, 20: A2, 4; Dkt. 213 ¶¶ 5, 20: A22, 25. Its primary role is to provide administrative services to the plans and give them access to investment options. Stark Dep. at 103-05: A94-95. The plans, in turn, make their chosen investment options available to participants. *Id.* at 14: A93.

6.      Principal Life offers two investment "platforms," known as the "Access Funds" and "Foundation Options" platforms. Schaaf Dep. (10/2/07) at 20: A86.

7.      The "Access Funds" platform includes approximately 1,400 mutual funds offered by various non-Principal companies, such as Vanguard and Fidelity. Dkt. 208 ¶ 9: A2; Stark Dep. at 140, 177-78: A96-97; Schaaf Dep. (10/2/07) at 20: A86; Button Dep. (10/10/07) at 22: A64.

8.      The "Foundation Options" platform generally consists of investment options offered by a Principal Life affiliate. Dkt. 208 ¶ 9: A2; Dkt. 213 ¶ 9: A23; Schaaf Dep. (10/2/07) at 20: A86. Foundation Options include sixty to seventy "separate accounts," a type of account at an insurance company that is protected from general creditors of the insurance company. Dkt. 208 ¶ 10: A2; Dkt. 213 ¶ 10: A23; Iowa Code §§ 507C.2(13); 508A.1(1). Those separate accounts, in turn, may invest in either a single mutual fund or a portfolio of securities and other investments. Stark Dep. at 201: A98.

9. For purposes relevant to this case, Principal Life earns revenue in two primary ways. First, Principal Life charges "hard dollar" fees to some 401(k) plans. For example, a plan may pay a fixed amount of money to Principal Life each year. Finnegan Dep. at 27: A66. Fairmount Park paid Principal Life $11,674 per year. PRI09285: A115; Ruppert Dep. (10/25/07) at 111: A83.

10. Second, Principal Life receives revenue sharing payments. Here is how revenue sharing works: Mutual fund companies incur various expenses. These expenses are recouped through an "expense ratio," *i.e*., a percentage of the assets in the fund that are withheld from the investor's return. Stark Dep. at 235-36: A99; Bowman Dep. at 119-20: A52; Department of Labor, Understanding Retirement Plan Fees and Expenses (available at http://www.dol.gov/ebsa/publications/undrstndgrtrmnt.html): A245-47. Mutual fund companies disclose the expense ratio to investors in a prospectus. Bowman Dep. at 118: A52; Brown Dep. (10/11/07) at 92-93: A60-61; Schaaf Dep. (10/2/07) at 46-48: A87. For example, a 2007 Principal Investors Fund prospectus discloses an expense ratio of 1.16 percent during three prior years. A209-10.

11. With respect to mutual funds on the Access Funds platform, Principal Life receives from the mutual fund company a portion of its expense ratio. Dkt. 213 ¶ 30: A27.

12. The concept is similar for Foundation Options, except that the money never leaves Principal Life. Bowman Dep. at 23, 91, 180, 188-89, 191: A50-51, 53-55. Instead, as is the case with respect to the Fairmount Park Plan, "When it's a separate account on our group annuity platform, there is no money changing hands. It's all revenue of Principal Life [Insurance] Company." *Id.* at 91: A51; *see also id.* at 180: A53 ("On the separate accounts there is no transfer of money from a fund to any other entity because that's all inside the wrapper of Principal Life Company"); PRI 47165, 47171 & 47191: A142, 148, 168.

13. Plaintiff hired Principal Life to provide certain services to the Fairmount Park 401(k) plan. KTSC 4231-52: A187-208; PRI09168: A110; Ruppert Dep. (10/25/07) at 31: A71. On behalf of the plan, plaintiff signed an agreement stating that "[n]othing in this Agreement, nor in the provision of Services, makes [Principal Life] a party to, or a fiduciary or administrator regarding, the Plan or any Plan Entity." KTSC 4243, at § 3.4: A199; Ruppert Dep. (10/25/07) at 84: A82.

14. From the beginning, plaintiff took an active role in selecting investment options for the Fairmount Park Plan and made the ultimate decisions about what options to offer to plan participants. Ruppert Dep. (10/25/07) at 126: A84.

15. According to plaintiff, when Fairmount Park hired Principal Life in 2000, a Principal employee recommended that plaintiff choose Principal funds. *Id.* at 40: A72. But plaintiff rejected that suggestion and "ultimately chose some Principal funds and some non-Principal funds." *Id.* at 40-41, 46, 72, 77-78: A72-73, 79, 80-81.

16. In subsequent years, plaintiff reviewed the performance of the plan's various investment options and, at times, directed Principal Life to change the plan's investment line-up. PRI 9844-45: A119-20; Ruppert Dep. (10/25/07) at 53-63: A74-77. Plaintiff added or deleted funds from the plan's lineup on multiple occasions. *See* PRI 9169: A111; PRI 9844-45: A119-20; PRI 9850-51: A121-22; PRI 10052-54: A123-25; KTSC 4186: A186; Ruppert Dep. (10/25/07) at 60-64, 69, 71: A76-79.

17. In each case, plaintiff made the final decision. *See* Ruppert Dep. (10/25/07) at 63, 71, 74: A77, 79-80; *see also* Schaaf Dep. (10/2/07) at 244: A89 ("in the end it's the plan sponsor who makes the choice about what investments to put into their lineup"); Schultz Dep. at 207: A91 (in choosing which funds to offer, "the plan sponsor ultimately makes the decision");

Brown Dep. (10/11/07) at 11-12: A58.  Plaintiff testified that he exercised his "own independent judgment in making those decisions."  Ruppert Dep. (10/25/07) at 63: A77.  "[T]he only person who makes the final decision on these changes is me."  Ruppert Dep. (10/25/07) at 74: A80.

      18.     In December 2002, plaintiff decided to freeze participant investments in three funds, based on his analysis that the funds had performed poorly.  PRI 9844-45: A119-20.

      19.     In late 2003, plaintiff again altered the plan's investment lineup by deleting certain funds.  PRI 9850-51: A121-22; PRI 10052-54: A123-25; Ruppert Dep. (10/25/07) at 60-64: A76-77.  He based that decision on his analysis of the funds' ratings, expense ratios, and performance compared to other funds.  Ruppert Dep. (10/25/07) at 63: A77.

      20.     In October 2004, plaintiff directed Principal Life to close numerous funds and open others in their place.  KTSC 4186: A186; Ruppert Dep. (10/25/07) at 69, 71: A78-79.

Respectfully submitted,

PRINCIPAL LIFE INSURANCE COMPANY

By:    /s/ Eric S. Mattson
       One of its attorneys

Brian L. Campbell
Whitfield & Eddy, PLC
317 Sixth Avenue, Suite 1200
Des Moines, Iowa  50309
Email:  campbell@whitfieldlaw.com
Phone:  (515) 288-6041

Joel S. Feldman
Mark B. Blocker
Eric S. Mattson
Hannah Ruehlman Blase
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois  60603
Email:  jfeldman@sidley.com
        mblocker@sidley.com
        emattson@sidley.com
        hblase@sidley.com
Phone:  (312) 853-7000

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing Defendant's Statement of Undisputed Material Facts was served on all attorneys through the Court's CM/ECF electronic filing system on June 29, 2010.

/s/ Eric S. Mattson

CH1 5361916v.2