# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-2554

_____

Joseph Ruppert, as Trustee of and on behalf of Fairmount Park, Inc. Retirement
Savings Plan and on behalf of all others similarly situated

*Plaintiff - Appellant*

v.

Principal Life Insurance Company

*Defendant - Appellee*

------------------------------

AARP

*Amicus on Behalf of Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: April 18, 2012
Filed: February 13, 2013

_____

Before LOKEN, COLLOTON, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Joseph Ruppert, as a trustee of the Fairmount Park, Inc. Retirement Savings Plan ("the Plan"), brought this action against Principal Life Insurance Company ("Principal"), alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. The district court[1] denied Ruppert's request for class certification, and the case proceeded on an individual basis. Pursuant to a confidential settlement agreement reached by the parties, the district court entered a consent judgment in favor of Ruppert. The consent judgment incorporated the terms of the agreement. The agreement purports to reserve Ruppert's right to appeal the denial of class certification, but there are nonetheless threshold questions about whether this court has jurisdiction over the appeal. Having considered those questions, we conclude that this court lacks jurisdiction, and we therefore dismiss the appeal.

I.

Fairmount Park, Inc. is the owner and operator of a racetrack near St. Louis, Missouri. The company offers its employees a 401(k) retirement savings plan. Joseph Ruppert, as one of the trustees of the Plan, hired Principal as the Plan's service provider. As a service provider, Principal provides administrative and recordkeeping services for the Plan and arranges access to investment options for the Plan's participants. Principal offers the Plan's trustees a group of investment options, and the Plan's trustees choose which of the options to offer to the Plan's participants. For instance, Principal offered approximately thirty to forty investment options for the Fairmount Park Plan, which chose approximately a dozen to include in the Plan's 401(k) lineup. Participants in the Plan then could choose to invest their contributions in any of the options the Plan had selected.

---

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

-2-

Principal receives part of its compensation for servicing plans through revenue-sharing arrangements with the mutual funds and separate accounts offered to the plans. Revenue sharing occurs when a portion of a fund's expense ratio is sent from the fund to Principal after plan participants invest in that fund. According to Principal, these revenue-sharing payments are used to offset the direct fees charged to each plan.

In 2006, Ruppert filed this suit as a putative class action, alleging that Principal violated ERISA by receiving revenue-sharing payments from mutual funds that Principal offered to 401(k) plans and by failing to disclose the receipt of the payments. According to the complaint, these actions constituted a breach of fiduciary duty in violation of 29 U.S.C. § 1104(a)(1)(A) and prohibited transactions in violation of 29 U.S.C. § 1106(b)(1) and (b)(3). Ruppert later amended the complaint to add a third count, alleging that Principal breached its fiduciary duty and engaged in prohibited transactions by investing the plans' contributions overnight, between the time Principal received the contributions from the plans and the time Principal invested the plans' contributions in the various mutual funds. According to the amended complaint, Principal kept the proceeds of the overnight investments for itself.

After the case was transferred from the Southern District of Illinois to the Southern District of Iowa, Ruppert moved for certification of the following class: "All trustees and plan sponsors of (and on behalf of) 401(k) retirement plans governed by the Employee Retirement Income Security Act of 1974 (ERISA) to which Principal Life Insurance Company provided services and which included investment options from which Principal Life Insurance Company received revenue sharing payments."

The district court denied Ruppert's motion for class certification. The court ruled that the class proposed by Ruppert failed to satisfy two requirements of Federal

-3-

Rule of Civil Procedure 23(a)—namely, that there are questions of law or fact common to the class, and that the claims or defenses of the representative party are typical of the claims or defenses of the class. The court found these elements lacking, because determinations of Principal's fiduciary status and breach thereof would require individualized, fact-specific inquiries. Ruppert petitioned for permission to appeal the denial of class certification, but this court denied the petition.

After some more motions and pretrial rulings, Ruppert and Principal eventually entered into a confidential settlement agreement. Pursuant to that "Confidential Agreement," the district court entered a consent judgment in favor of Ruppert and against Principal in the amount of $80,000. The agreement further provided that "the Trustee explicitly reserves, on behalf of the Plan, his right to appeal the Court's denial of class certification." The district court incorporated the terms of the Confidential Agreement into the consent judgment.

The Confidential Agreement allows Ruppert to seek further recovery if the court of appeals reverses or vacates the district court's denial of class certification. In the event of a reversal, Ruppert and the Plan may petition the district court to be paid out of any future recovery awarded to any class that is certified. The payment allowed under the agreement is the amount to which the Trustee and the Plan would have been entitled as a member of any such class, if that recovery would have exceeded the $80,000 provided for by the agreement. The agreement also allows Ruppert and the Plan to petition the district court for an award of attorney's fees, costs, and expenses to be paid out of any future recovery awarded to any class that is certified. Under the fee contract between Ruppert and his attorneys, the Plan must pay to the attorneys $5,000 as advanced costs and expenses of litigation, and 33.3 percent of the lump sum recovered from Principal under the agreement. If it turns out that this amount exceeds the pro rata share that Ruppert or the Plan would have been required to pay as a member of a class that is later certified, then Ruppert and the Plan

-4-

may petition the district court for an award from the class recovery to the extent of the difference.

Ruppert now appeals, arguing that the district court abused its discretion in refusing to certify a class.

## II.

Ruppert asserts that we have jurisdiction over this appeal. He maintains that the consent judgment entered pursuant to the Confidential Agreement is a final judgment, and that there is still a live case or controversy despite the settlement. He notes that he expressly reserved his right to appeal the class certification ruling, and he asserts a continuing interest in the outcome of the litigation—namely, his right to participate in any future recovery by a certified class and to shift costs and attorney's fees to the class. Principal is silent on the question of jurisdiction. In the Confidential Agreement, Principal agreed that once Ruppert filed a timely notice of appeal, it would not "take any position in any judicial proceedings . . . that in any way questions whether [this court] has appellate jurisdiction to hear the Trustee's anticipated appeal of the Court's denial of class certification."

Even when the parties agree that this court has appellate jurisdiction, however, the court is obliged to consider whether they are correct. *Williams v. Cnty. of Dakota, Neb.*, 687 F.3d 1064, 1067 (8th Cir. 2012). Having considered the matter in light of the consent judgment and the Confidential Agreement, we conclude that there are two reasons why this court lacks jurisdiction.

First, this court has jurisdiction of appeals from all "final decisions" of the district courts, 28 U.S.C. § 1291, but the terms of the Confidential Agreement destroy the purported finality of the district court's judgment. Although the agreement characterizes the consent judgment as "a final judgment from which an appeal of the

Court's denial of class certification shall lie," the agreement allows for Ruppert's individual claims to spring back to life.  If this court were to reverse the district court's denial of class certification, then Ruppert would be permitted to petition the district court for additional recovery based on any future recovery of a class that is certified on remand by the district court.  His individual claims are thus not finally resolved.

In the Second Circuit, a decision is considered final, notwithstanding the potential for a plaintiff to reassert a dismissed claim on remand, if the "plaintiff's ability to reassert a claim is made conditional on obtaining a reversal from [the court of appeals]."  *Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003); *see SEC v. Gabelli*, 653 F.3d 49, 56-57 (2d Cir. 2011), *cert. granted on other grounds*, 133 S. Ct. 97 (2012); *cf. Doe v. United States*, 513 F.3d 1348, 1354 (Fed. Cir. 2008).  This court, however, has refused to accept that approach to finality.  In *Clos v. Corrections Corp. of America*, 597 F.3d 925 (8th Cir. 2010), we rejected an attempt "to manufacture appellate jurisdiction by crafting a stipulation in which [the appellant] tied the fate of his remaining claim to the outcome of his appeal."  *Id*. at 928.  In this circuit, unless the appellant's claims are unequivocally dismissed with prejudice, there is no final appealable decision.  *Accord India Breweries, Inc. v. Miller Brewing Co.*, 612 F.3d 651, 656-57 (7th Cir. 2010); *Federal Home Loan Mortg. Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 440 (3d Cir. 2003) ("[T]he Consent Judgment preserved Freddie Mac's right to reinstate Counts Two and Three, if we were to reverse and remand the district court's ruling. . . .  The Consent Judgment thus represented an inappropriate attempt to evade § 1291's requirement of finality."); *Dannenberg v. Software Toolworks, Inc.*, 16 F.3d 1073, 1076 (9th Cir. 1994).  The Confidential Agreement and consent judgment in this case permit Ruppert to revive his individual claim in order to petition the district court for additional recovery.  Therefore, the district court's decision is not final.

Second, if we are wrong about finality, then Ruppert's voluntary dismissal of his individual claims renders the case moot. Ruppert has relinquished his claims, and there is no longer an Article III case or controversy. There is no party before the court with a sufficient personal stake in challenging the district court's denial of class certification.

In two cases, the Supreme Court permitted an appeal of an order denying class certification even after the named plaintiff no longer could pursue his individual substantive claim. In both instances, however, the termination of the plaintiff's substantive claim was involuntary. In *United States Parole Commission v. Geraghty*, 445 U.S. 388 (1980), a federal inmate challenged the lawfulness of the federal parole guidelines and sought certification of a class that included other inmates. After the district court denied certification, the inmate's claim expired because he was released from prison. *Id.* at 390. Citing the "flexible character of the Art. III mootness doctrine," *id.* at 400, the Supreme Court held that the inmate nonetheless retained a "personal stake" in the procedural class certification claim, such that appeal did not become moot upon expiration of the inmate's substantive claim. *Id.* at 404. The Court intimated no view, however, "as to whether a named plaintiff who *settles the individual claim after denial of class certification* may, consistent with Art. III, appeal from the adverse ruling on class certification." *Id.* at 404 n.10 (emphasis added).

In *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326 (1980), the plaintiffs sued a bank, alleging that the bank made usurious finance charges. The plaintiffs sought to represent their interests and those of a class of similarly aggrieved customers. The district court denied a motion to certify a class, and the bank then tendered to each plaintiff the maximum amount that each could have recovered. *Id.* at 329. The plaintiffs declined the tender, but the district court entered judgment in favor of the plaintiffs and dismissed the action over their objections. *Id.* at 329-30.

-7-

The plaintiffs appealed the district court's denial of class certification, and the Supreme Court held that the case was not moot.  The Court explained that the right to certify a class is procedural only, and it is "ancillary to the litigation of substantive claims."  *Id.* at 332.  The Court then made a significant observation:  "Should these substantive claims become moot in the Art. III sense, *by settlement of all personal claims for example,* the court retains no jurisdiction over the controversy of the individual plaintiffs."  *Id.*  The Court emphasized, however, that the "factual context in which this question arises is important."  *Id.*  Because "at no time did the named plaintiffs [in *Roper*] accept the tender in settlement of the case," *id.*, and because judgment was entered "over their continued objections," *id.*, the case was not moot, so long as the plaintiffs retained an economic interest in class certification.  *Id.* at 332-33.  The Court concluded that the desire of the named plaintiffs to shift a portion of the fees and expenses incurred in the litigation to successful class members was a sufficient personal stake for the named plaintiffs to pursue the appeal.  *Id.* at 334 n.6.

This court held in *Potter v. Norwest Mortgage, Inc.*, 329 F.3d 608 (8th Cir. 2003), and *Anderson v. CNH U.S. Pension Plan*, 515 F.3d 823 (8th Cir. 2008), that an appeal of the denial of class certification is moot where the named plaintiff voluntarily settles his claim and retains no personal stake in spreading litigation costs. As the Seventh Circuit recognized, we noted that after a voluntary settlement, "a plaintiff *may* have a continuing interest in the class certification issue if he retains an interest in shifting costs and attorney fees to the putative class members."  *Muro v. Target Corp.*, 580 F.3d 485, 490 n.5 (7th Cir. 2009) (internal quotation omitted). But we did not decide that issue, and this case requires us to do so.  Unlike the plaintiffs in *Potter* and *Anderson*, Ruppert asserts that the terms of the Confidential Agreement give him an economic interest in shifting litigation costs to a class if the certification ruling is reversed.

Although *Potter* and *Anderson* left open the possibility of appellate jurisdiction in this scenario, we now conclude that Ruppert does not have a sufficient personal

-8-

stake to maintain a case or controversy, because his individual claims have "become moot in the Article III sense." *Roper*, 445 U.S. at 332. We recognize that the D.C. Circuit saw "no difference between those who voluntarily settle individual claims and those who have their individual claims involuntarily extinguished," so long as the litigant retains an interest in shifting the fees and expenses of class litigation. *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 529 (D.C. Cir. 2006). But the "personal stake" in spreading litigation costs was sufficient to maintain a case or controversy in *Geraghty* and *Roper* only because the named plaintiffs' substantive claims were involuntarily dismissed. The Court reserved judgment in *Geraghty* about whether voluntary settlement would be different, *Geraghty*, 445 U.S. at 404 n.10, and the Court specifically contemplated in *Roper* that the outcome would be different if the substantive claims became moot "by settlement of all personal claims." *Roper*, 445 U.S. at 332. We therefore agree with the Fourth Circuit that "when a putative class plaintiff voluntarily dismisses the individual claims underlying a request for class certification, . . ., there is no longer a self-interested party advocating for class treatment in the manner necessary to satisfy Article III standing requirements." *Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 100 (4th Cir. 2011) (internal quotation omitted); *see also Pettrey v. Enterprise Title Agency, Inc.*, 584 F.3d 701, 705 (6th Cir. 2009) ("[I]t is doubtful that there is a live controversy here because the named plaintiffs' claims were voluntarily relinquished, whereas they were involuntarily terminated in both *Roper* and *Geraghty*."). If there is a final decision here, then the case is moot.

The appeal is dismissed.

———————————————

-9-